**Roy F. DIEBOLD, Appellant,**

v.

**CIVIL SERVICE COMMISSION OF ST. LOUIS COUNTY, etc., et al., Appellees.**

**No. 79–1192.**

United States Court of Appeals, Eighth Circuit.

Submitted Oct. 8, 1979.

Decided Dec. 10, 1979.

---

Stephen J. Nangle, Clayton, Mo., for appellant.

Dennis C. Affolter, Asst. County Counselor, Clayton, Mo., for appellees; Thomas W. Wehrle, St. Louis County Counselor, Clayton, Mo., on brief.

Before ROSS and STEPHENSON, Circuit Judges, and McMANUS, District Judge.*

ROSS, Circuit Judge.

This appeal poses the difficult constitutional question of whether an indicted individual's fifth amendment privilege against self-incrimination is threatened if he must participate in an administrative proceeding, as the sole means of contesting the loss of his job, which involves consideration of matters related to or similar to those for which a criminal indictment has been issued. Even where, as here, the accused employee is free to assert the privilege in the administrative proceeding, the choices available to him are still undesirable. He may either elect to remain silent while the administrative commission hears evidence of his criminal conduct, and virtually guarantee the loss of his job, or he may voluntarily testify and waive the fifth amendment privilege.

Preferring neither of these choices, the employee in this action filed suit in the district court[1] seeking injunctive relief under 28 U.S.C. § 1343,[2] declaratory relief

---

* The Honorable EDWARD J. McMANUS, Chief Judge, United States District Court for the Northern District of Iowa, sitting by designation.

1. The Honorable James H. Meredith, Chief Judge, United States District Court for the Eastern District of Missouri.

2. Diebold sought to enjoin the Commission from holding a dismissal appeal hearing until after the criminal case had been concluded.

under 28 U.S.C. § 2201, reinstatement to his job, and alleging violation of his constitutional rights under 42 U.S.C. § 1983. The district court denied injunctive relief on November 8, 1978, and granted defendants' motion for summary judgment on February 6, 1979, holding that no case or controversy existed and that, as a matter of law, the administrative proceeding in this case was constitutionally sound. We agree with the district court that there existed no justiciable controversy over the employee's participation in the proceeding. Moreover, we agree that, as a matter of law, the dilemma forced upon the appellant was a constitutionally permissible one.

The appellant in this action, Roy F. Diebold, was dismissed from his job with the St. Louis County Civil Service (Commission) on September 7, 1978, following his arrest for child molestation. The letter of dismissal listed both his alleged criminal and immoral conduct *and* his incompetency and inefficiency as reasons for termination of the employment relationship. It should be noted that either of these grounds would be · sufficient for the dismissal of an employee under the Civil Service Commission's rules.

The following day, September 8, Diebold's attorney filed an appeal of the dismissal, requesting a hearing before the Commission. On October 4 he informed the Commission that his client would invoke his fifth amendment privilege until the criminal charges for child molestation were resolved, since it appeared that the Commission proceeding would cover allegations of child molestation similar to those for which he was indicted. Certain rules of the Commission, however, presented potential problems resulting from this approach:

(a) Rule XVIII Sec. 2(B)(5):

Unless incapacitated, the person placing an appeal before the Commission shall appear personally and may not be excused from answering questions and supplying information. Either party may have legal counsel at such a hearing.

(b) Rule XVIII Sec. 2(B)(8):

Employees in the Classified Service shall be required to attend and testify without subpoena. *If any employee shall wilfully refuse to testify or answer any questions* relative to the matter being heard by the Commission on any grounds, *he may be dismissed from the classified service.*

(Emphasis supplied.) Fearing that Diebold's invocation of the fifth amendment might provide separate grounds for dismissal, the attorney requested a policy statement from the Commission assuring Diebold that the assertion of the privilege would not prejudice his appeal.

On the same day that the Commission mailed its refusal to issue the policy statement, Diebold filed the complaint and motion for preliminary injunction with the district court. The preliminary injunction was denied, and the Commission began its administrative proceedings on November 9. It was during this session that the Commission's chairman stated that Diebold's refusal to answer a question on fifth amendment grounds would not provide "separate grounds for mandatory dismissal under our rules." On December 21, the Commission upheld Diebold's dismissal, and on February 6, the defendants' motion for summary judgment was granted.

On appeal, Diebold asserts that the granting of a summary judgment on the defendants' behalf was improper because genuine issues as to material facts were in existence at the time it was granted. In addition, Diebold contends that, as a matter of law, the Commission was not entitled to a judgment on the merits.

### I.

At the outset, we recognize that in reviewing a decision of a district court to grant a summary judgment, we apply the same standard as the trial court. *Butler v. MFA Life Insurance Co.,* 591 F.2d 448, 451 (8th Cir. 1979). Under Fed.R.Civ.P. 56(c) a summary judgment should be granted only where there "is no genuine issue as to any material fact and * * * the moving party is entitled to a judgment as a matter of law." Furthermore, the facts must be viewed in the light most favorable to the party opposing the motion, and the court

must give that party the benefit of all reasonable inferences to be drawn from the facts. *Butler v. MFA Life Insurance Co., supra,* 591 F.2d at 451. Even viewed in this light, however, we are convinced that this case presents neither genuine factual issues nor a case and controversy.

■ In denying Diebold's request for injunctive relief, the district court determined that there was no indication that Diebold was or would have been penalized for invoking the fifth amendment in the Commission's proceedings. There was not even a showing that Diebold would have been required to testify at the hearing. Furthermore, at a Commission hearing the following day, November 9, the chairman stated that Diebold's invocation of the privilege would not provide separate grounds for dismissal under the Commission's rules.[3] The Commission then moved for a summary judgment, claiming that no live controversy existed over the application of the rules to Diebold's case, and the motion was granted. We agree with the district court that no deprivation of constitutional rights has yet occurred. And since no further hearings are contemplated, we hold that no factual issues are presented to us for resolution.

■ Diebold nevertheless contends that he is at least entitled to a declaratory judgment since the Commission's rules are still in existence and could be enforced in spite of the chairman's intentions. We disagree with this argument. Diebold's position seems to ignore the clear message of this court in *Cass County v. United States,* 570 F.2d 737, 740 (8th Cir. 1978), wherein we stated that even under the Declaratory Judgment Act, 28 U.S.C. § 2201, "[i]n order to present a 'controversy,' a question must not be abstract but must define an issue which is concrete and specific." The mere threat that the Commission's rules might someday be enforced does not provide us

with a concrete or specific issue, as was pointed out in *United Public Workers of America (CIO) v. Mitchell,* 330 U.S. 75, 91, 67 S.Ct. 556, 91 L.Ed. 754 (1947).

## II.

■ Even if this case presented a justiciable controversy or genuine factual issues, the Commission still would be entitled to a judgment as a matter of law. As the district court pointed out, the fifth amendment presents no obstacle to administrative proceedings such as the one we are examining in this appeal. It is well settled that as long as an employee such as Diebold is not faced with the decision to surrender either his job or his constitutional privilege against self-incrimination, his predicament, no matter how undesirable, does not raise constitutional questions. *Sanitation Men v. Sanitation Comm'r,* 392 U.S. 280, 284, 88 S.Ct. 1917, 20 L.Ed.2d 1089 (1968).

The Supreme Court has long held that the fifth amendment "not only protects the individual against being involuntarily called as a witness against himself in a criminal prosecution but also privileges him not to answer official questions put to him in any other proceeding, civil or criminal, formal or informal, where the answers might incriminate him in future criminal proceedings." *Lefkowitz v. Turley,* 414 U.S. 70, 77, 94 S.Ct. 316, 322, 38 L.Ed.2d 274 (1973). Although we feel that this same rationale applies to administrative proceedings such as the ones we are here dealing with, this position renders no support to Diebold's argument. The Supreme Court's major concern in this area has been in preventing testimony obtained from an employee under threat of dismissal from being used against that person in subsequent criminal proceedings. For example, in *Garrity v. New Jersey,* 385 U.S. 493, 500, 87 S.Ct. 616, 620, 17 L.Ed.2d 562 (1966), police officers who were being questioned about alleged ticket fixing

---

**3.** At the hearing the chairman made the following statement:

> We do not believe that there is anything in the rules which would require or mandate as a separate grounds for dismissal would not mandate Mr. Diebold's dismissal if he refused

to answer a question invoking his Fifth Amendment privileges. In other words, we do not believe that would be a separate grounds for mandatory dismissal under our rules.

were informed that a refusal to answer questions on fifth amendment grounds would result in their dismissal. The Court held that "the protection of the individual under the Fourteenth Amendment against coerced statements prohibits use in subsequent criminal proceedings of statements obtained under threat of removal from office * * *." Similarly, in *Sanitation Men v. Sanitation Comm'r, supra,* 392 U.S. at 284, 88 S.Ct. at 1920, city employees who refused to sign waivers of fifth amendment immunity before a grand jury were fired from their jobs. The Court acknowledged that the possible ineffectiveness of the waiver did not diminish the impropriety of the state's action. The real constitutional controversy arose from the alternatives with which the employees were faced, because "the precise and plain impact of the proceedings * * * was to present them with a choice between their constitutional rights or their jobs."

We are dealing with an entirely different factual situation. There exists here no requirement that Diebold waive his immunity under the fifth amendment. Nor is there a threat that he will be fired simply for invoking that privilege. *See Baxter v. Palmigiano,* 425 U.S. 308, 317–18, 96 S.Ct. 1551, 1557–1558, 47 L.Ed.2d 810 (1975). ("In this respect, this case is very different from the circumstances before the Court in the *Garrity-Lefkowitz* decisions, where refusal to submit to interrogation and to waive the Fifth Amendment privilege, *standing alone and without regard to the other evidence,* resulted in loss of employment or opportunity to contract with the State.") (Emphasis added.) Since there is no showing that Diebold must either answer questions which might incriminate him in future criminal proceedings or forfeit his job, we find no impermissible sanction in the Commission's rules.

Finally, Diebold argues that his situation presents a special problem because he has already been indicted, and perhaps faces a greater threat to his fifth amendment rights. We feel that this distinction has no bearing on the constitutional issues involved. Furthermore, we agree with the

position of the Fifth Circuit Court of Appeals in *United States v. White,* 589 F.2d 1283, 1286 (5th Cir. 1979), which was issued in response to the same arguments Diebold sets forth in this appeal:

Keno contends that being forced to go to trial in a civil case while criminal charges arising out of the same conduct were pending forced him to choose between preserving his fifth amendment privilege and losing the civil suit. It appears to us, however, that Keno overstates his dilemma. He was not forced to surrender his privilege against self-incrimination in order to prevent a judgment against him; although he may have been denied his most effective defense by remaining silent, there is no indication that invocation of the fifth amendment would have necessarily resulted in an adverse judgment.

We have examined Diebold's other arguments and find them similarly to be without merit. Accordingly, we affirm the decision of the district court.