**Ernie BARKER and Ineta Barker, Appellants,**

v.

**SAC OSAGE ELECTRIC COOPERATIVE, INC. Raymond Scholes, Jack Wood, Pat Crane and Gerald Bland, Appellees.**

**No. 87–2626.**

United States Court of Appeals, Eighth Circuit.

Submitted June 16, 1988.

Decided Sept. 21, 1988.

Rehearing and Rehearing En Banc Denied Nov. 2, 1988.

Mark E. Fitzsimmons, Springfield, Mo., for appellants.

William H. McDonald, Springfield, Mo., for appellee Sac Osage.

Frank M. Evans, III, Springfield, Mo., for remaining appellees.

* The Honorable William C. Stuart, Senior United States District Judge for the Southern District of Iowa, sitting by designation.

Before JOHN R. GIBSON, Circuit Judge, BRIGHT, Senior Circuit Judge, and STUART,* Senior District Judge.

STUART, Senior District Judge.

Ernie and Ineta Barker appeal from the district court's [1] Order granting the defendants' motion for summary judgment. Mr. Barker filed this action against Sac Osage Electric Cooperative, Inc. (Sac Osage) and its directors alleging breach of contract, defamation, false light invasion of property, prima facie tort, and intentional infliction of emotional distress. Mrs. Barker claims a cause of action against defendants for loss of consortium and property damage. Plaintiffs also seek punitive damages. Jurisdiction is based on diversity citizenship. 28 U.S.C. § 1332. Missouri law applies. Unless otherwise stated "plaintiff" will refer to Ernie Barker.

Plaintiffs contend the district court erred in ruling that a release of claims executed by Barker, in favor of Sac Osage and its directors, and his acceptance of the benefits of the settlement agreement, barred all claims in this action. Barker claims that the release only barred actions arising from occurrences prior to his signing of the release and its delivery to appellees' attorneys on or about October 8, 1983. He also claims that his acceptance of the benefits under the agreement does not constitute a waiver of his right to sue for breach of the agreement. We agree with the district court's determination as to the effect of Barker's release and acceptance of benefits. We affirm the granting of the defendants' motion for summary judgment.

In reviewing a district court's granting of a motion for summary judgment, we apply the same standard as the trial court. *Diebold v. Civil Service Commission of St. Louis County*, 611 F.2d 697, 699 (8th Cir.1979). Under Federal Rule of Civil Procedure 56, summary judgment should be granted only where there "is no genuine issue as to any material fact and ... the moving party is entitled to a judgment as a

1. The Honorable Russell G. Clark, United States District Judge.

matter of law." *Id.* at 699, *quoting* Fed.R. Civ.P. 56. Furthermore, the facts must be viewed in the light most favorable to the party opposing the motion, with the Court giving that party the benefit of all reasonable inferences to be drawn from the facts. *Diebold*, 611 F.2d at 699–700. See also *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 106 S.Ct. 2505, 2511–12, 91 L.Ed.2d 202 (1986).

## I. FACTS VIEWED IN LIGHT MOST FAVORABLE TO PLAINTIFF.

Plaintiff-appellant Ernie Barker was employed as the general manager of Sac Osage from 1975 through October, 1983. On June 13, 1983, a special board meeting was convened where several Sac Osage employees spoke to the board concerning complaints against Mr. Barker. On June 15, 1983, two board members met with other employees regarding complaints against Mr. Barker. At its regular meeting on June 27, 1983, the Board discussed further the charges made against Barker by the various employees and decided to retain him as manager, but placed him on 90 days probation.

Three months later, Barker asked to be reinstated without restriction, but the board declined to do so. Negotiations began at that time for Barker's resignation. These negotiations are formalized in several documents; a *Release* dated October 1, 1983; an *Agreement* dated October 24, 1983; a notice to other employees; and two letters of recommendation from the board to plaintiff dated September 28, 1983.

The release dated October 1st and signed by Barker on or about October 8, 1983 contained the following provision:

> If any employee or director shall seek to contradict any of the matters set forth in the letter labeled Exhibit B and C hereto, [the September 28 letters] this release shall no longer be of any force or effect as to any such employee or director who shall contradict the terms of such letter.

It was agreed by all parties that after Barker signed the release it was to be given to Sac Osage's law firm (Ewing firm) and was not to be delivered to Sac Osage until the directors had "agreed to and signed" the remaining settlement documents. Plaintiff's attorney, Mr. Knauer, testified at his deposition that:

> I felt that if we signed a release and put it in the hands of the Board itself that they could not be trusted to carry out their part of the agreement, and they would still have our release and resignation, so that is why the documents were to be delivered to the Ewing firm and to be held by them until Sac Osage had completed its part of the deal.

On October 11, 1983, the Board of Sac Osage issued a news release explaining why Barker resigned as manager of the Coop. Plaintiff knew the contents of the release before it was published. It is this news release that forms the basis of this lawsuit. Plaintiff claims it violated the provision in the release quoted above.

At the Board meeting on October 24, 1983, the Release and the Agreement, including the letter of recommendation and name-clearing letter, were submitted to the Board and the Agreement was executed by the Board. The record is not clear as to the date Barker signed the agreement. In addition to severance pay and vacation pay, Barker accepted payments totaling $6,603.23 from Sac Osage between October 14, 1983, and December 30, 1983.

## II. DISCUSSION.

The agreement, the release, the two letters of recommendation and the notice to employees are all part of the compromise and settlement agreement and are to be considered together. Several instruments made at the same time and relating to the same subject matter may be read together as one contract and recitals in one may be explained by references to the other. *Merz v. First National Bank*, 682 S.W.2d 500, 502 (Mo.Ct. of App.1984). The agreement specifically mentions the release in paragraph 6 which states "Barker agrees to execute a release in the form hereto attached in favor of Sac Osage and its directors and employees, such release to be conditioned as set forth therein." The release, which is dated October 1, 1983, spe-

cifically mentions the agreement. In numbered paragraph 1, the release states:

NOW THEREFORE IT IS AGREED AS FOLLOWS:

1. Sac Osage has agreed to make payments in accordance with the attached "Agreement" labeled Exhibit 1, including attachments thereto.

The terms of the release are clear. It releases any existing claims, demands, causes of action or actions against Sac Osage and against an individual director or individual employee. On appeal neither party has disputed the clarity of the release.[2] The issue is the effective date of the release. If the release became effective on the date plaintiff signed it, it would not bar this suit which arises out of actions which took place on October 11th subsequent to his signing. It is clear from the undisputed facts before the district court, however, that the release was part of the settlement agreement which was not finalized until the Sac Osage Board approved the delivery of the letters of recommendation and signed the agreement on October 24th.

On the execution of a contract in writing, delivery is ordinarily an essential element; and a delivery on condition is not a complete delivery until the condition is fulfilled. *Kelley v. Illinois Cent. R. Co.*, 352 Mo. 301, 177 S.W.2d 435, 439 (1944). The undisputed testimony of plaintiff's attorney shows that the delivery of the release to the Sac Osage board was conditional. The release was not to take effect unless the board approved the agreement and issued the letters of recommendation. During oral argument, appellant conceded that at any time before the conditions were fulfilled, plaintiff could have retaken possession of the release and prevented it from taking effect. These conditions were fulfilled on October 24, 1983, therefore that is the effective date of the release. Accordingly, since Barker's causes of action ac-

crued on October 11, 1983, they are covered by the release which bars the claims made in this lawsuit.

■ Barker contends that even if the release is valid as to the other causes of action, he may sue for a breach of contract. Barker contends that when defendants violated the conditions of the release by contradicting the terms of the letters of recommendation that Barker had the right to end the agreement or continue the agreement and sue for damages for the breach. Barker cites a case construing Pennsylvania law to hold that an election to continue performance under a contract after the other party breaches does not constitute a waiver of the right to damages for the breach. *McAlpine v. AAMCO*, 461 F.Supp. 1232 (Eastern Dist.Mich.1978). This case is not applicable to the facts here as Barker had completed his performance by executing the resignation and release. Also, as the district court correctly noted, this argument is only valid as to Sac Osage as an entity since the contract is clearly between Sac Osage and Mr. Barker. The individual directors signed the contract as agents of the principal and are not bound by the contract. Where a corporate officer or director makes an authorized contract in the name of the corporation so as to bind the corporation, the contract is with the corporation alone; corporate directors are not personally liable for breach of corporate contracts. *Receivables Finance Corp. v. Hamilton*, 408 S.W.2d 44, 46 (MO 1966). The individual defendants must be granted summary judgment as to the breach of contract action.

■ Sac Osage contends that Barker has waived the breach of contract by accepting its benefits. The alleged breach occurred prior to October 14th by the press release of the Sac Osage board. No breach is alleged subsequent to October 24, 1983. Between the dates of October 14, 1983 and

---

2. Appellant has not raised the reservation of rights issue discussed in Judge Bright's dissent. Appellant argues only that the release became effective when it was delivered to appellees' attorneys on October 8, that the cause of action did not mature until the press release on Octo-

ber 11 and that he did not intend by the release to release future claims. Appellant does not contend that he did not intend to release all claims that had matured by the effective date of the release.

December 30, 1983, Barker accepted the sum of $6,603.23. Where a contracting party, with knowledge of the breach by the other party, receives money in the performance of the contract, he will be held to have waived the breach. 17 AmJur 2d Contracts § 396. In fact, the continued acceptance of payments after an alleged breach is perhaps the clearest form of waiver. *Cities Services Helex, Inc. v. United States,* 211 Ct.Cl. 222, 543 F.2d 1306, 1313–14 (1976). *See also, Anselmo v. Manufacturers Life Ins. Co.,* 771 F.2d 417 (8th Cir.1985). The Court finds that the acceptance of the compensation and of the letters of recommendation by the plaintiff in this case to be a waiver of any breach of contract. If plaintiff thought that the defendants had breached the contract, he had an election. He could continue to accept the contract payments and forego litigation, or refuse the payments and sue the defendants. He chose to continue to receive the payments and is therefore bound by the contract, which includes the release.

Accordingly, we affirm the judgment of the district court.

BRIGHT, Senior Circuit Judge, concurring in part and dissenting in part.

I agree that the release dated October 1, 1983, signed by Barker releases the Cooperative. My reasoning is that Barker accepted the benefits of the release and settlement after learning that the Cooperative, through its board of directors, issued a news release which seems to contradict the previously issued letters (exhibits B and C attached to the release). These letters served to compliment Barker's work and to recommend him to prospective employers.[1]

By accepting the fruits of the settlement from the Cooperative, he waived whatever claims he had against the Cooperative.

Nevertheless, I disagree that Barker has fully released claims against the directors who issued the news release, which may have contradicted those letters, because the release signed by the parties contained a valid reservation permitting Barker to sue each director individually, if any director contradicted the prior letters.

A reservation in a settlement agreement permitting an injured party to sue remaining individuals is valid if it is expressed clearly and unmistakeably. *Liberty v. J.A. Tobin Constr. Co.,* 512 S.W.2d 886, 890 (Mo.Ct.App.1974). The reservation involved here states that Barker's release of all claims against individual directors is void "if any employee or director shall seek to contradict any of the matters set forth in the letter labeled Exhibit B and C * * *." Record at 148. This statement clearly and unmistakenly permits Barker to pursue a cause of action against an individual director if a contradiction is made.

Whether the news release contradicted the prior letters is an issue that Barker properly raised before the district court. He alleged in his complaint that the directors, acting individually and on behalf of the Board, contradicted the prior letters when they issued the news release. Specifically, the news release listed the charges directed against Barker and the evidence presented to support the charges.[2] While the Board noted that they did not consider the evidence for purposes of taking action against the management of the Cooperative, it asserted that the charges "had contributed to the divisiveness and low morale

1. The first letter referred to Barker's abilities as a manager at the Cooperative and stated:

> During your ten years as General Manager, you reversed a deteriorating situation with regard to line and pole maintenance, to the point where the Sac Osage Electric Cooperative is now in excellent condition as far as the equipment goes. And you did the above turn around on the maintenance situation while holding our costs down on behalf of our members.

Record at 150.

The second letter exonerated Barker from any claims of mismanagement, concluded that some charges were without foundation and concluded that, as to other charges, "such violations were technical only, and certainly not intended to defraud." Record at 152.

2. The evidence presented concerned "some employee complaints of offensive or harrassing [sic] conduct toward female employees, discrepancies in the travel expense account of the manager, and failure to provide supervision and job management." Record at 128.

* * * of the Coop employees." Record at 129. Moreover, the Board concluded that certain allegations of misconduct by Barker in Board elections had "impaired the Board's trust and confidence in the manager [Barker]." *Id.* Additionally, the Board accused Barker of playing "a duplicious [sic] role in the 1982 annual election of Board members * * *." *Id.* Finally, the last paragraph contained a statement that the news release had been "approved unanimously by the Board." *Id.* The contents of the news release support Barker's claim of contradiction.

Under Missouri law, an agent or officer of a corporation may be held personally liable for acts done by the corporation if "he had actual or constructive knowledge of the actionable wrong and participated therein." *Wolfersberger v. Miller*, 327 Mo. 1150, 39 S.W.2d 758, 764 (1931). *See also Patzman v. Howey*, 340 Mo. 11, 100 S.W.2d 851, 856 (1936); *McKeehan v. Wittels*, 508 S.W.2d 277, 282 (Mo.Ct.App.1974); *City of St. Louis v. Boos*, 503 S.W.2d 133, 135 (Mo.Ct.App.1973); H. Henn & J. Alexander, *Laws of Corporations and Other Business Enterprises* § 218 (3d ed. 1983). Although the news release bears only the legend "Sac Osage Electric Cooperative, Inc." and is signed for the Cooperative by Raymond Scholes, who serves as president, that release also recites that "[t]his news release was approved unanimously by the Board." Record at 129.

Assuming, without deciding on this appeal, that the release represents the individual responses of each member of the Board, it appears that the directors at minimum had knowledge of the contents of the news release and participated in its issue.

It seems very clear to me, for the reasons I have stated, that the district court prematurely granted summary judgment in favor of the individual directors and that the majority has not considered the reservation of rights against the individual directors contained in Barker's release. With such reservation of rights, the effective date of the release and settlement becomes immaterial and, contrary to the view of the majority, does not control the disposition of this case.[3]

Thus, while agreeing to affirm the dismissal against the Cooperative, I would reverse the summary dismissal against the individual directors of the Cooperative.

---

3. Contrary to the implication of n. 2, majority op. at 489, the question of what claims had been released was before the district court and this court on appeal. Appellant in his contentions on appeal summarized the issue of release as follows:

TRIAL COURT ERRED IN GRANTING SUMMARY JUDGMENT ON ALL COUNTS, AND SPECIFICALLY WHEN IT FOUND THAT THE EFFECTIVE DATE OF THE RELEASE WAS OCTOBER 24, 1983, RATHER THAN ON OR ABOUT OCTOBER 8, 1983, WHEN THE RELEASE WAS SIGNED BY THE APPELLANT. THE TRIAL COURT ERRED IN THAT, CLAIMS IN TORT WHICH HAVE NOT MATURED OR WERE NOT KNOWN TO APPELLANT WHEN EXECUTING HIS RELEASE *AND WHICH HE DID NOT INTEND TO AFFECT WHEN SETTLEMENT WAS MADE* ARE NOT DISCHARGED BY A RELEASE. (Emphasis added.)