_____

Nos. 95-2460 and 95-2462
_____

S. Michael McKay,                        *
                                         *
     Appellant/Cross-Appellee,           *
                                         *
     v.                                  *    Appeal from the United States
                                         *    District Court for the
WilTel Communication Systems,            *    Eastern District of Missouri
Inc., a Delaware corporation,            *
                                         *
     Appellee/Cross-Appellant.           *
                              _____

                    Submitted:   February 12, 1996

                       Filed:   June 28, 1996
                              _____

Before MAGILL, HEANEY, and MURPHY, Circuit Judges.
                              _____

MURPHY, Circuit Judge.


     Michael McKay sued his former employer, WilTel Communication Systems,
Inc. (WilTel), to collect additional commissions on a large phone system
sold by an affiliated company.  The jury awarded McKay $119,215.  McKay
appeals from the judgment entered by the district court in his favor,
arguing he should have also received statutory damages and attorney fees.
WilTel cross-appeals to challenge the sufficiency of the evidence and
several rulings by the district court on jury instructions and evidence.
We affirm in part and reverse in part.

I.

McKay joined a predecessor of WilTel as a salesperson in 1977 and soon became its sales manager for Arkansas. Except for a brief period in 1980-81, McKay continued to work for WilTel through 1990, when he resigned. WilTel is an unregulated vendor of telecommunications equipment. During the relevant period, it was a subsidiary of Centel Corporation, headquartered in Chicago. Centel was also the parent company of Central Telephone Company of Florida (Florida Central), which is a regulated provider of telephone service with its headquarters in Tallahassee.

The dispute here revolves around a sale in which McKay helped sell a multi-million dollar phone system, including both equipment and service, to Florida State University (FSU). The university considered a proposal to buy the system from WilTel, but decided to purchase from Florida Central because the latter could offer a purchase agreement using periodic tariff payments.

FSU agreed to pay Florida Central roughly $6 million during the five year contract term and $6 million more if it exercised its option to extend for another five years. Florida Central purchased equipment valued at about $2.5 million from WilTel and then resold it to FSU as part of the sales and service package. WilTel added a hypothetical profit to the price it charged Florida Central and paid McKay approximately $30,000[1] as a commission based on the equipment sale. McKay argued he should receive a commission on the entire value of the FSU transaction because of his role in it, but he cashed the commission check after informing WilTel management

---

[1]The $30,439 commission was based on McKay's compensation agreement, which provided for one percent on the first $3 million of a major sale and two percent on the balance. This figure was revised later, and the record suggests that McKay received a total of either $30,877.42 or $31,000.72. McKay does not dispute that he received the latter amount, but to avoid confusion we will refer simply to a $30,000 commission.

that he was protesting the amount.

The Florida Central sale took two years to complete, and McKay's role was significant. He had been assigned the account in late 1985 when a senior WilTel manager learned of FSU's plan to replace its existing system. McKay visited FSU some fifteen times, and the evidence suggests that he was the employee from the Centel entities most significantly and consistently involved in the sale efforts.

It became clear in 1986 that FSU's financial situation would not allow a cash sale, so McKay devised a joint approach for the Centel entities, including WilTel and Florida Central. Because Florida Central was regulated, it could offer a tariffed sale proposal while WilTel could not. Ultimately Centel presented three options to FSU in one proposal on Centel letterhead. Centel prevailed over several competitors, and FSU selected an option involving both WilTel and Florida Central. Equipment from WilTel would allow FSU to run its own switching facility and provide service directly to students. It would also provide the advanced technology necessary for FSU's expanding computer operations. The package apparently also included local service from Florida Central. All payments were to be made to Florida Central according to the tariffed rate over five or ten years. Florida Central then purchased the equipment from WilTel for resale to FSU.

McKay discussed his compensation with his superiors several times during the process. In early 1987, he asked his immediate manager, Lynn McKee, how his commission would be computed. After McKee checked with more senior executives, he told McKay he would receive his normal commission even if the tariff option were chosen. McKay testified that he felt it unnecessary to obtain a precise definition of "normal" at that point because the sale was still speculative, a cash sale to FSU was still a possibility, and he had always been treated fairly by the company. As a tariffed

sale became more likely, however, it became clear that the vast majority of the proceeds from the sale would pass through Florida Central accounts rather than WilTel's. McKay was concerned that he would not be compensated fairly and wrote a series of memoranda to McKee and other WilTel executives in late 1987 and early 1988.

After WilTel paid McKay the $30,000 commission check cashed under protest, he argued in another series of memoranda that he was entitled to a commission on the entire transaction between Florida Central and FSU, not just the transfer between the two subsidiaries. The commission issue was still not resolved when McKay resigned in 1990 to accept another position.

McKay brought suit in state court in 1992, alleging that WilTel had breached the compensation agreement and had been unjustly enriched by not paying him a commission on the full value of the FSU transaction. McKay also alleged he was entitled to statutory damages under R.M. § 407.913, which provides for additional payment if commissions are not paid as due when a salesperson is terminated. The first complaint also contained breach of contract and unjust enrichment claims against WilTel based on a sale to McDonnell Douglas, Inc. WilTel removed the case to federal court based on diversity of citizenship.

The district court granted summary judgment in favor of WilTel on both counts relating to McDonnell Douglas and on the breach of contract claim regarding FSU. The court concluded that McKay had received all commissions due him on the McDonnell Douglas sale and that the compensation plan was inapplicable to the FSU transaction because WilTel had not made a sale to FSU.

McKay then was granted leave to file an amended complaint in which he alleged that "the sum of $30,439 does not represent the reasonable value of the services performed by plaintiff" in the FSU transaction and that WilTel was unjustly enriched. He again

included the statutory claim under Mo. Rev. Stat. § 407.913, but the district court ruled before the case was submitted to the jury that the statute could not be applied. The jury returned a verdict after trial in favor of McKay for $119,215, plus interest and costs. WilTel's motions for judgment as a matter of law, for remittitur, and for a new trial were denied, and this appeal and cross-appeal followed.

## II.

McKay raises only one issue on appeal: that the district court erred by concluding that Mo. Rev. Stat. § 407.913 could not be applied in this case. The district court concluded that use of the statute would be an unconstitutional retroactive application because the FSU sale had occurred more than a year before the statute's enactment. Mo. Rev. Stat. Const. Art. I, § 13.[2]

Section 407.913 was enacted in 1989 and reads:

Any principal who fails to timely pay the sales representative commissions earned by such sales representative shall be liable to the sales representative in a civil action for the actual damages sustained by the sales representative, an additional amount as if the sales representative were still earning commissions calculated on an annualized pro rata basis from the date of termination to the date of payment. In addition the court may award reasonable attorney's fees and costs to the prevailing party.

McKay claimed throughout this litigation that he is entitled to both the statutory damages, which he computed to be some $300 per day, and attorney fees.

WilTel responds first that the statute does not apply because McKay's cause of action regarding any additional commissions

---

[2]Article I, § 13 of the Missouri Constitution states that "no law . . . retrospective in its operation . . . can be enacted."

-5-

accrued before the effective date of the statute and it cannot be applied retroactively.  WilTel's position is that the right to sue accrued in the spring of 1988, more than a year before the statute's enactment (July 1989) and its effective date (no earlier than October 1989).  McKay argues that his right to sue accrued when he left the company in 1990, but that the statute could be applied retroactively even if the correct date were 1988 because it only creates an additional remedy, not a new cause of action. Under Missouri law procedural statutes may be applied retroactively, but substantive ones, often defined as those affecting vested rights, may not. See, e.g., Doe v. Roman Catholic Diocese of Jefferson City, 862 S.W.2d 338, 340-42 (Mo. 1993) (en banc).  We do not need to decide when a cause of action accrues under § 407.913 or whether the statute is procedural or substantive because the section is inapplicable for other reasons.[3]

The parties also disagree whether the commissions McKay seeks are covered by § 407.913.  WilTel argues that they are not because McKay received all commissions due under his contract when it paid him the $30,000 in 1988.  McKay argues that the statute applies because he seeks additional commissions on the FSU sale which were due and owing when he left WilTel.  Our review of legal questions is de novo, and we may affirm on any basis supported by the record.  Monterey Development Corp. v. Lawyer's Title Insurance Corp., 4 F.3d 605, 608 (8th Cir. 1993).

The statute, and the other sections enacted with it, focus on the timely payment of sales commissions earned by a sales representative under contract with a principal.  See Mo. Rev. Stat. §§ 407.911-.915.  Section 407.913 provides for actual damages, plus an additional amount for the period between the date a salesperson

---

[3]Similarly, we need not address the arguments raised by WilTel regarding the constitutionality of retroactive application of the statute or by McKay regarding WilTel's late amendment of its answer to include its affirmative defense on the constitutional issue.

is terminated and the date the commission is ultimately paid. In determining when, and impliedly if, a sales commission becomes due, the contract between the sales representative and the principal "shall control." Rev. Stat. Mo. § 407.912.1(1). McKay now concedes that he received all he was due under his written contract, and it is the extracontractual nature of his efforts on the FSU transaction that makes recovery in quantum meruit possible.

Recovery of commissions on a quantum meruit basis rather than on a compensation plan or contract appears to be outside the intended scope of the statute. McKay's breach of contract claim was dismissed before trial, and he has not appealed that decision. McKay also testified that he left WilTel voluntarily to pursue another business opportunity, but the statute appears designed to prevent loss of commissions because of discharge from employment.[4] Since WilTel paid McKay his contractual commission and he was never terminated, McKay's situation is not covered by § 407.913. The district court did not err in declining to permit application of the statute.

### III.

On its cross appeal, WilTel challenges the admission of some evidence, several jury instructions, and other questions of law. All of its arguments were properly preserved in its motions for judgment as a matter of law.

WilTel argues that McKay presented no evidence that it gained a direct economic benefit from the transfer of the equipment to Central Florida or from the total sale to FSU. A benefit retained by the defendant is required by Missouri law under an unjust

---

[4]Monetary awards are "calculated on an annualized pro rata basis from the date of termination to the date of payment." Mo. Rev. Stat § 407.913.

enrichment theory.  See Koepke Construction, Inc. v. Woodsage Construction Co., 844 S.W.2d 508 (Mo.App. 1992).  WilTel therefore contends that the district court erred by refusing to instruct the jury that a benefit must be proven and by denying WilTel's motions for judgment as a matter of law or for a new trial.

The amended complaint included a claim that the $30,000 commission paid does not "represent the reasonable value of the services performed by plaintiff."[5]  While the amended complaint also claims that WilTel was unjustly enriched, the relief requested was the reasonable value of McKay's services, not the amount by which WilTel was allegedly unjustly enriched. The district court interpreted this claim as one in quantum meruit, or implied contract, and concluded that any economic benefit to WilTel was irrelevant.  E.g., Excerpts from the Transcript for March 2, 1995 at 4, 13. It therefore instructed the jury that:

> Your verdict must be for [McKay] and against [WilTel] if you believe first:  [McKay] furnished services to [WilTel] with respect to the Florida State University transaction mentioned in the evidence; and second, [WilTel] accepted such services for which [McKay] was not fully compensated by [WilTel].

If a proper objection is made, jury instructions are reviewed as a whole to insure that they fairly and adequately state the substantive law on the issue raised.  American Business Interiors, Inc. v. Haworth, Inc., 798 F.2d 1135, 1139 (8th Cir. 1986).  If the objecting party can also demonstrate that it was prejudiced, a new trial is necessary.  See Fink v. Foley-Belsaw Co, 983 F.2d 111, 113-14 (8th Cir. 1993).  The district court's instruction is consistent with the pleadings[6] and appears to be a faithful

---

[5]This language was not included in the original complaint, which apparently claimed only unjust enrichment.

[6]"All pleadings shall be so construed as to do substantial justice." Fed.R.Civ.Proc. 8(f).

application of Missouri Approved Jury Instruction § 4.04 on quantum meruit. The district court's interpretation of this claim should not be disturbed.

Recovery under quantum meruit or implied contract does not require proof that the defendant made a profit or received some economic benefit, only that the plaintiff performed services and that the defendant accepted them. Johnson Group, Inc. v. Beecham Inc., 952 F.2d 1005, 1007 (8th Cir. 1991) (Missouri law); Jorritsma v. Tymac Controls Corp., 864 F.2d 597, 599 (8th Cir. 1988) (Missouri law); Missouri Approved Jury Instructions § 4.04. WilTel requested that McKay pursue the FSU sale using a joint approach with Florida Central. He performed the requested services, and Florida Central made the sale. The district court did not err in denying the motions for judgment as a matter of law and for a new trial or in refusing to instruct the jury on a benefit to WilTel. Holland v. Tandem Computers Inc., 49 F.3d 1287, 1288 (8th Cir. 1995) (denial of motion for judgment as matter of law reviewed de novo with evidence viewed in light most favorable to nonmoving party); Norton v. Caremark, Inc., 20 F.3d 330, 334, 340 (8th Cir. 1994) (denial of motion for new trial reviewed for clear abuse of discretion).

WilTel also argues that McKay failed to prove that his work on the FSU sale was sufficiently different from his work under his compensation agreement to warrant equitable damages. Under Missouri law, quantum meruit damages are available from an employer only if the services are "outside the scope of the contract." H.H. Robertson Co., Cupples Products Div. v. V.S. DiCarlo General Contractors, Inc., 950 F.2d 572, 577-78 (8th Cir. 1991) (Missouri law); St. Louis Testing Laboratories, Inc. v. Mississippi Valley Structural Steel Co., 254 F.Supp. 47, 55-56 (E.D.Mo. 1966), aff'd 375 F.2d 565 (8th Cir. 1967). The evidence must be viewed in the light most favorable to McKay as we review WilTel's argument. McBryde v. Carey Lumber Co., 819 F.2d 185, 188 (8th Cir. 1987).

There is no dispute that McKay's compensation agreement did not cover tariff sales made by Florida Central but arranged by McKay. WilTel witnesses indicated that the structure of the FSU sale was highly unusual, and it is undisputed that WilTel agreed to pay McKay a "normal" commission on a tariff sale. The evidence also would support a finding that his superiors urged him to pursue a joint approach to the sale, including the tariff option which he apparently proposed and which only Florida Central could offer. There was substantial evidence from which the jury could find that McKay provided services outside the scope of his contract that made a successful sale possible, and denial of the motions for judgment as a matter of law was proper.[7] <u>Hastings v. Boston Mutual Life Insurance Co.</u>, 975 F.2d 506, 509 (8th Cir. 1992).

WilTel also argues that McKay waived his claim to additional commissions by continuing to work for the company for over two years after the FSU sale. As the many memoranda from McKay to various superiors and his cashing the commission check under protest demonstrate, however, McKay made clear his dissatisfaction with WilTel's resolution of the matter.

The cases relied upon by WilTel are not on point because in them a party continued to accept payments under a contract after becoming aware of a breach of that contract. <u>See, e.g.</u>, <u>Barker v. SAC Osage Electric Cooperative, Inc.</u>, 857 F.2d 486 (8th Cir. 1988) (Missouri law); <u>Long v. Huffman</u>, 557 S.W.2d 911 (Mo. App. 1977); <u>Chemical Fireproofing Corp. v. Bronska</u>, 542 S.W.2d 74 (Mo. App. 1976). While waiver of a breach was found under those circumstances, McKay's situation differs. His acceptance of the commission for that part of the sale which fit under his compensation agreement cannot be interpreted as acquiescence in

---

[7]Because there was evidence from which the jury could conclude that WilTel's $30,000 payment did not satisfy its obligations to McKay, the district court did not err in refusing WilTel's requested instruction to the contrary.

WilTel's decision to pay him only that amount for the FSU sale.  The cited cases do not speak to the situation where a sale is beyond a written contract and a claim is made for additional compensation under a quantum meruit theory.[8]

Likewise, McKay's cashing of the check under protest was not an accord and satisfaction under Missouri law.  The doctrine of accord and satisfaction does not apply unless the payor indicates its intent that acceptance of the check will settle all claims between the parties.  <u>McKee Construction Co. v. Stanley Plumbing & Heating Co.</u>, 828 S.W.2d 700, 701 (Mo. App. 1992).  Because there was no evidence that WilTel expressed such an intent, the district court did not err in denying WilTel's motions for judgment as a matter of law on this basis.

WilTel argues that the jury should have been instructed that McKay's compensation agreement would have limited his commission to $100,000 had the complete sale to FSU been made directly by WilTel.  The jury was instructed that:

> In determining the reasonable value of the services rendered by Plaintiff to Defendant, with respect to the Florida State University transaction mentioned in the evidence, you may consider all of the evidence adduced during trial, including the provision of the 1987 Compensation Plan mentioned in the evidence.  <u>However, the Court has ruled as a matter of law, that that plan does not provide a maximum value for Plaintiff's services</u>.

(emphasis added).

We conclude as a matter of law that McKay could not have reasonably expected to make more than a $100,000 commission on the sale and that that jury instruction was therefore erroneous.  McKay

---

[8]For similar reasons WilTel's argument that the district court should have given an affirmative defense instruction based on waiver and estoppel is without merit.

was told he would be paid on a normal basis. His compensation plan read "[t]he maximum allowable commission on any one sale shall be $100,000 on SL-100's . . . . Exceptions for large PBX networks may be appropriate but must be approved in writing by the President in advance of the proposal." His commission therefore would have been limited to $100,000 had WilTel made the sale directly. Just as WilTel, or other Centel entities, should not have received essentially free services from McKay because FSU chose the tariff option rather than a purchase straight from WilTel, McKay should not receive more than the contract maximum. In reaching this conclusion, we also note that McKay himself assumed the $100,000 limit would apply throughout his unsuccessful negotiations with WilTel for additional commissions and during the first stages of this litigation.

The district court therefore erred in not granting WilTel's motion for remittitur. The damages awarded to McKay should be reduced so that his total recovery before interest and costs is $100,000 (but deducting the commissions already paid on the FSU transaction).[9] A new trial is unnecessary because there is a clear standard that can be applied in a reliable manner to reduce the jury's verdict to the contractual $100,000 limit. Cf. Hicks v. Capitol American Life Insurance Co., 943 F.2d 891, 895 (8th Cir. 1991) (case remanded for new trial where evidentiary record needed to be redeveloped).

WilTel argues that the jury should have been instructed to reduce the value of the Central Florida-FSU transaction to its present value before computing McKay's commission. Under Missouri law, damages based on future payments should be reduced to their present value. Mattan v. Hoover Co., 166 S.W.2d 557 (Mo. 1942).

---

[9]Having reached this conclusion, we need not address WilTel's argument that it was error to exclude McKay's responses to interrogatories in which he acknowledged the $100,000 limit.

While the better course would have been to instruct the jury on present value, WilTel's closing argument stressed that the present value of damages should be calculated. It pointed to a September 1987 memorandum prepared by McKay in which he consistently used the present value to arrive at the commission he believed was due. Because the jury was aware of the relevance of present value as it considered the reasonable value of McKay's services, WilTel has not made a sufficient showing of prejudice to require a new trial.

WilTel also argues that the district court should have instructed the jury that there is a presumption under Missouri law that services performed for an employer are not "extra work" subject to additional compensation. Henderson v. Brown Electrical Supply Co., 555 S.W.2d 635, 639 (Mo. App. 1977). The evidence is clear, however, that McKay's efforts related to the FSU transaction were out of the ordinary. It was apparently the first time a joint approach was taken by WilTel with a sister subsidiary phone company, and this situation was not contemplated by the compensation plan. McKay was assigned and encouraged to do the work normally necessary to consummate a sale but to make available to FSU purchase options which would preclude commissions under the contract. He was told he would receive a normal commission on any resulting sale. A conclusion that his efforts fell outside his normal duties is implicit in the jury's decision that the reasonable value of his services was more than he was paid. In light of the evidence, WilTel has failed to demonstrate that it was prejudiced by any failure to instruct on the presumption.

WilTel also challenges the admission of evidence relating to the reasonable value of McKay's services. The district court admitted testimony and documents related to the commissions paid by Regional Bell Operating Companies to sales agencies who sold phone services for them. Evidence was also admitted showing that WilTel paid a twenty percent commission to its sales representatives on

its share of sales made on behalf of Bell companies.[10]  The evidence shows that the Bell agency commission rates were presented to the jury as being analogous, but not directly applicable, to the FSU transaction.  WilTel had the opportunity to point out any defects in the analogy to the jury.  Based on the evidence, these Bell agreements covered situations sufficiently similar to the FSU sale to make them useful to the jury in determining the reasonable value of McKay's services, and WilTel has not shown that any prejudice outweighed their probative value, and their admission was not an abuse of discretion.  Cummings v. Malone, 995 F.2d 817 (8th Cir. 1993).

Finally, WilTel argues that the district court should not have admitted evidence showing how WilTel sales representatives were compensated in other unusual transactions.  It suggests the evidence was irrelevant because the sales involved neither McKay nor WilTel.  Again, the district court did not abuse its discretion because these transactions were sufficiently similar to the FSU sale to aid the jury in determining the reasonable value of McKay's services.

IV.

In conclusion, we affirm on all issues except for the amount of damages which is reversed, and the case is remanded to the district court for further proceedings consistent with this opinion.

---

[10]WilTel contends that this commission rate also should not have been admitted because it was not adopted on a national basis until 1993 and would not have been applicable to the FSU transaction in any event.  The rate was relevant to the determination of the reasonable value of McKay's services, however, because it tends to show how WilTel valued the efforts of its sales representatives in situations similar to the FSU sale.

A true copy.

Attest:

       CLERK, U.S. COURT OF APPEALS, EIGHTH CIRCUIT.