**Ken LAPPONESE, Respondent,**

v.

**CARTS OF COLORADO, INC., Appellant.**

**No. ED 99023.**

Missouri Court of Appeals, Eastern District, Division Five.

Nov. 26, 2013.

Motion for Rehearing and/or Transfer to Supreme Court Denied Jan. 27, 2014.

Application for Transfer Denied March 25, 2014.

Peter J. Dunne, Robyn Greifzu Fox, Robert T. Plunkert, Pitzer Snodgrass, P.C., St. Louis, MO, for appellant.

Jill R. Rembusch, Summers Compton Wells LLC, St. Louis, MO, for respondent.

KURT S. ODENWALD, Judge.

*Introduction*

Carts of Colorado, Inc. ("Carts of Colorado") appeals from the judgment of the trial court entered upon a jury verdict in favor of Ken Lapponese ("Lapponese") on his claim for damages relating to unpaid sales commissions. Sections 407.911 et seq. of the Missouri Merchandising Practices Act allows for the recovery of statutory damages and attorneys' fees should sales commissions not be paid following the termination of the relationship between a sales representative and principal.[1] Carts of Colorado challenges the inclusion of statutory damages and attorneys' fees in the damages awarded to Lapponese. Carts of Colorado maintains that no contract was terminated as required by Section 407.912 and that Lapponese was not "terminated" within the meaning of Section 407.913 because he voluntarily quit his employment. Lastly, Carts of Colorado contests the award of attorneys' fees to Lapponese, claiming that the award included attorneys' fees incurred by Lapponese defending against Carts of Colorado's separate counterclaim.

Because the termination of Lapponese's relationship with Carts of Colorado falls within the scope of Sections 407.912 and 407.913, we affirm the award of damages. However, because we are unable to determine from the record before us how the trial court calculated the attorneys' fee awarded to Lapponese, we reverse and remand for findings of fact and conclusions of law on the issue of attorneys' fees.

---

1. All statutory references are to RSMo 2000.

*Factual and Procedural History*

Viewed in the light most favorable to the verdict, the following facts were adduced at trial. In November 2005, Dan Gallery ("Gallery"), president and CEO of Carts of Colorado, approached Lapponese about a sales position with the company. Carts of Colorado designs and sells carts and kiosks for the food service industry. Gallery sent Lapponese a formal offer of employment on December 20, 2005. The offer stated that Lapponese's employment with Carts of Colorado would be one of "voluntary employment 'at will', and either you or Carts can terminate your employment at any time, for any reason, with or without notice." The offer set forth an annual base salary, and also provided for the payment of commissions under a formula utilizing Lapponese's "generated revenue" in excess of $1,200,000. Lapponese accepted the employment offer on December 21, 2005, and on December 22, 2005, signed a document acknowledging that he understood his employment was "terminable at will, so both the Company and I remain free to end our work relationship at any time." Lapponese later signed a confidential non-disclosure agreement related to his employment with Carts of Colorado on December 27, 2005. Lapponese began work at Carts of Colorado on January 2, 2006.

Lapponese did not generate sufficient revenue to earn a commission in 2006 or 2007. In 2008, Lapponese made a $1.65 million sale to the Dallas Cowboys; however, payment of the $1.65 million was not expected until 2009. Rather than booking all of the revenue from the Cowboys' sale in 2009, Carts of Colorado was to credit $400,000 of the sale to Lapponese's 2008 sales. The remaining revenue was to be booked for 2009. Lapponese received a commission bonus of $16,081 for 2008.

In January 2009, Lapponese discovered that Carts of Colorado actually booked $582,000 of the Dallas Cowboy's sale to 2008, $182,000 more than he had been told. Carts of Colorado did not increase Lapponese's 2008 commission payment to reflect the increased allocation of sales to 2008. As a result, Lapponese claimed an additional $6,646 from Carts of Colorado for his 2008 commission.

In 2009, Lapponese generated $3,612,369 in sales, which entitled him to $120,618.45 in commissions under his agreement. After crediting Lapponese for $36,000 advanced to him during 2009, Carts of Colorado owed Lapponese $84,618.45 in commissions. Carts of Colorado did not pay Lapponese the remaining $6,646 of the 2008 commissions or the $84,618.45 due to him for his 2009 commissions. Carts of Colorado explained to Lapponese that the original employment agreement contained a mistake as to how his commission would be calculated, and that his commission was to be determined by a formula based on gross margin, not gross sales. Believing that Carts of Colorado was not going to pay him all of his earned commissions for 2008 and 2009, Lapponese resigned from the company on January 15, 2010, leaving the commission issue unresolved. Lapponese began working for a competitor, B–R Carts and Kiosks, Inc., on January 18, 2010.

On July 11, 2011, Lapponese filed an amended petition seeking payment of $90,052.09 in commission payments owed to him by Carts of Colorado for 2008 and 2009. Lapponese claimed that Carts of Colorado's refusal to pay the commissions constituted a breach of the employment agreement between the parties. Lapponese further sought payment of statutory damages and attorneys' fees provided under Sections 407.911 through 407.913. Carts of Colorado filed a counterclaim alleging that Lapponese breached its contract with Carts of Colorado and also

breached the parties' separate non-disclosure agreement.

The case was tried to a jury in May 2012. At the close of Lapponese's evidence, Carts of Colorado moved for a directed verdict, which was denied by the trial court. After a four-day trial, the jury found in favor of Lapponese on his breach of contract claim and awarded damages totaling $135,000. The jury found against Carts of Colorado on its counterclaims. The trial court entered its judgment ordering that Lapponese recover $135,000 in damages, $69,411.50 in attorneys' fees under Section 407.913, and taxable costs of $2,585.85, for a total judgment of $206,997.35. Carts of Colorado filed a motion for judgment notwithstanding the verdict, new trial, or to amend judgment, which was denied. This appeal follows.

### Points on Appeal

Carts of Colorado presents four points on appeal, two of which focus on the meaning of the term "terminated" as used in Section 407.913. First, Carts of Colorado argues that the trial court erred in giving Instruction No. 11, which allowed for an award of statutory damages under Section 407.913 because Lapponese was not "terminated" within the meaning of Section 407.913. Second, Carts of Colorado claims the trial court erred in denying its motions for directed verdict, judgment notwithstanding the verdict, new trial, or to amend judgment because the evidence was undisputed that Lapponese voluntarily resigned his position with Carts of Colorado, and therefore was not "terminated" within the meaning of Section 407.913 as a matter of law. Third, Carts of Colorado asserts that the trial court erred in denying its motions for directed verdict, judgment notwithstanding the verdict, new trial, or to amend judgment because Section 407.912 is applicable only upon the termination of a contract, and the evidence failed to establish that a contract was terminated by any party. Finally, Carts of Colorado avers that the trial court erred in awarding Lapponese attorneys' fees because the award included fees Lapponese incurred defending against Carts of Colorado's counterclaim for breach of the non-disclosure agreement and not in connection with the prosecution of his claim under Section 407.911 et seq.

### Standards of Review

■ Whether a jury was instructed properly is a question of law that we review *de novo. Klotz v. St. Anthony's Med. Ctr.*, 311 S.W.3d 752, 766 (Mo. banc 2010). "Review is conducted in the light most favorable to the submission of the instruction, and if the instruction is supportable by any theory, then its submission is proper." *Id.* We will reverse for instructional error only if the error resulted in prejudice that materially affects the merits of the action. *Id.* Instructional error is presumed prejudicial when the verdict is in favor of the party who submits the instruction. *Children's Wish Found. Int'l, Inc. v. Mayer Hoffman McCann, P.C.*, 331 S.W.3d 648, 654 (Mo. banc 2011).

■ We review a trial court's denial of a motion for directed verdict and a motion for judgment notwithstanding the verdict by determining whether the plaintiff made a submissible case. *Drury v. Missouri Youth Soccer Ass'n, Inc.*, 259 S.W.3d 558, 565 (Mo.App. E.D.2008). We review the evidence in the light most favorable to the verdict, giving the plaintiff the benefit of all reasonable inferences and disregarding evidence and inferences to the contrary. *Johnson v. Allstate Indem. Co.*, 278 S.W.3d 228, 235 (Mo.App. E.D. 2009). If the denial of a directed verdict or judgment notwithstanding the verdict is based upon a conclusion of law, we review the trial court's decision *de novo. Boggs ex rel. Boggs v. Lay*, 164 S.W.3d 4, 15

(Mo.App. E.D.2005). The trial court's interpretation of a statute is an issue of law that warrants *de novo* review. *Gasconade Cnty. Counseling Servs., Inc. v. Missouri Dep't of Health,* 314 S.W.3d 368, 372 (Mo. Ct.App.2010).

▮▮▮ Where the award of attorneys' fees is not mandatory, "the granting or refusal to grant attorneys' fees by the trial judge is primarily discretionary and will not be disturbed absent the showing of an abuse of discretion." *Tate v. Golden Rule Ins. Co.,* 859 S.W.2d 831, 835 (Mo.App. W.D.1993) (quoting *City of Lexington v. Seaton,* 819 S.W.2d 753 (Mo.App. W.D. 1991)). We will not reverse a trial court's award of attorneys' fees unless the amount awarded is arbitrary or so unreasonable as to indicate "indifference and lack of proper judicial consideration." *Tate,* 859 S.W.2d at 835.

*Discussion*

**I. The trial court did not err in allowing the recovery of statutory damages and attorneys' fees because the voluntary resignation by a sales representative is not excluded as a termination under Section 407.913.**

The first two points on appeal presented by Carts of Colorado focus on the same issue: Does a sales representative's right to recover statutory damages and attorneys' fees under Section 407.911 et seq. due to non-payment of commissions by the principal apply only when the sales representative is terminated by the principal? Having found no Missouri case law on point, we treat this issue as one of first impression.

In its first point on appeal, Carts of Colorado asserts that the trial court erred in giving Instruction No. 11, which instructed the jury to award Lapponese statutory damages available under Section 407.913. Instruction No. 11 stated:

If you find in favor of plaintiff Ken Lapponese, then you must award him such sum as you believe he and defendant Carts of Colorado, Inc. agreed upon as a commission **and an additional amount as if plaintiff were still earning commissions calculated on an annualized pro rata basis from January 15, 2010 to the present date.**

(emphasis added). Carts of Colorado's claim of error is straightforward: Section 407.913 does not apply to the facts of this case because Section 407.913 applies only to situations where the sales representative is involuntarily terminated by his or her principal. Here, Lapponese was not "terminated" within the meaning of the statute because he chose to resign. Carts of Colorado submits this same legal premise in its second point on appeal, arguing that the evidence cannot support a finding that Lapponese was "terminated" within the meaning of Section 407.913 because Lapponese voluntarily resigned. Therefore, the trial court also erred in denying its motions for directed verdict, judgment notwithstanding the verdict, new trial, or to amend judgment.

Section 407.911 et seq. is that portion of the Merchandising Practices Act relating to the obligation for and payment of sales commissions. These provisions have sometimes been referred to as the Missouri sales commission statutes. *See J.S. DeWeese Co. v. Hughes–Treitler Mfg. Corp.,* 881 S.W.2d 638, 642 (Mo.App. E.D. 1994). The sales commission statutes focus on the timely payment of sales commissions earned by a sales representative under contract with a principal. *See* Sections 407.911 through 915.

Section 407.913 provides:

Any principal who fails to timely pay the sales representative commissions earned by such sales representative shall be liable to the sales representative in a

civil action for the actual damages sustained by the sales representative and an additional amount as if the sales representative were still earning commissions calculated on an annualized pro rata basis *from the date of termination* to the date of payment. In addition the court may award reasonable attorney's fees and costs to the prevailing party (emphasis added).

Section 407.911, which provides definitions for Sections 407.911 through 407.915, does not define "termination."

When no statutory definition is available, the primary rule of statutory interpretation is to give effect to legislative intent as reflected in the plain language of the statute. *Brinker Missouri, Inc. v. Dir. of Revenue*, 319 S.W.3d 433, 437–38 (Mo. banc 2010) (quoting *Akins v. Dir. of Revenue*, 303 S.W.3d 563, 565 (Mo. banc 2010)). To determine legislative intent, we must give an undefined word used in a statute its plain and ordinary meaning as found in a dictionary. *Hoffman v. Van Pak Corp.*, 16 S.W.3d 684, 688 (Mo.App. E.D.2000). We must not read into a statute a legislative intent contrary to the intent made evident by its plain language. *Schwab v. Nat'l Dealers Warranty, Inc.*, 298 S.W.3d 87, 89 (Mo.App. E.D.2009).

Additionally, statutes imposing penalties must be strictly construed. *Hoffman*, 16 S.W.3d at 689. "Courts should neither enlarge nor narrow the true meaning of penal statutes by construction, but should give effect to the plain meaning of words and where they are doubtful, should adopt the sense in harmony with the context and the obvious policy and object of the enactment." *Bd. v. Eurostyle, Inc.*, 998 S.W.2d 810, 814 (Mo.App. S.D.1999) (internal quotations omitted). To that end, we must read the statute as a whole and in *pari materia* with related sections. *See Dodson v. City Of Wentzville*, 216 S.W.3d 173, 177 (Mo.App. E.D.

2007). That is, consistent statutes relating to the same subject are construed as though constituting one act, and we presume they were intended to be read harmoniously. *K.M.J. v. M.A.J.*, 363 S.W.3d 172, 177 (Mo.App. E.D.2012).

The Oxford Dictionary defines "termination" as 1: "the action of bringing something or coming to an end; 2: an ending or final point of something, in particular." Oxford Dictionaries Online, http://www.oxforddictionaries.com/us/ definition/american_english/termination, (last visited Nov. 19, 2013). Nothing in the dictionary definition of "termination" limits its application to an involuntary termination by an employer. To interpret the term "termination" as meaning only an involuntary termination by one party adds a qualification that the statute simply does not contain. "Although not strictly a canon of construction, courts avoid interpreting statutes to include qualifiers where such an interpretation impermissibly adds language to the statute." *Wallace v. Wallace*, 269 S.W.3d 469, 483 (Mo.App. E.D. 2008) (internal quotations and citations omitted). The plain and ordinary meaning of the word "termination" does not support the limited application of the statutes suggested by Carts of Colorado. The interpretation of Section 407.913 propounded by Carts of Colorado can only be achieved by adding the qualifier "by the principal" immediately following the word "termination." We are not persuaded that a basis exists for adding such language not included by the legislature to this statute.

To assist in our analysis, we consider Section 407.912, which also uses the term "termination." Section 407.912 explains when a principal must pay commissions to its sales representatives in order to avoid the statutory damages and attorneys' fees imposed under in Section 407.913. Section 407.912 states, in relevant part:

1. When a commission becomes due shall be determined in the following manner:

(1) The written terms of the contract between the principal and sales representative shall control;

. . . .

2. Nothing in sections 407.911 to 407.915 shall be construed to impair a sales representative from collecting commissions on products or services ordered prior to the *termination of the contract between the principal and the sales representative* but delivered and accepted by the purchaser after such termination.

3. When the *contract between a sales representative and a principal is terminated,* all commissions then due shall be paid within thirty days of *such termination.* Any and all commissions which become due after the date of *such termination* shall be paid within thirty days of becoming due.

Section 407.912 uses the term "terminated" or "termination" four times, each time in reference to the termination of the contract between a sales representative and a principal. Notably, Section 407.912 does not limit the principal's obligation to timely pay all commissions then due only if the contract is terminated by the principal. Rather, by its plain and simple terms, Section 407.912 applies whenever the contract is "terminated," regardless of whether the termination is initiated by action of the sales representative or the principal, or occurs simply upon the expiration of the stated term of the contract.

Our broad interpretation of the term "termination" is validated when reading Section 407.912 and Section 407.913 together, as intended by the legislature. Section 407.912 states when the commissions are due and payable. The ensuing Section 407.913 then imposes a penalty if the principal does not pay the commissions determined to be owed under Section 407.912. Both Sections relate to the same subject, and are reasonably construed as being the same act. Both Sections use the same word "termination" and we presume these words to be read harmoniously throughout these two provisions. We can only read Section 407.912 and Section 407.913 in harmony by consistently applying the broad usage of the term "termination" as found in Section 407.912.

While no Missouri case has interpreted the word "termination" under Section 407.913, Carts of Colorado offers as guidance for this Court the reasoning of the Eighth Circuit Court of Appeals in *McKay v. WilTel Commc'ns Sys., Inc.,* 87 F.3d 970 (8th Cir.1996). In *McKay,* the appellant, like Lapponese, resigned from his position as a salesperson. *Id.* at 973. The appellant then sought actual and statutory damages under Section 407.913 for the unpaid commissions he was due. *Id.* at 975. The appellant in *McKay* conceded that he received all commissions due under his written contract, but argued that Section 407.913 allowed him to recover in quantum meruit for extra-contractual work he had completed. *Id.* The *McKay* court reasoned that the recovery of commissions under quantum meruit rather than by contract fell outside the intended scope of Section 407.913. *Id.* The court further noted that the appellant left WilTel voluntarily, "but the statute appears designed to prevent loss of commissions because of discharge from employment." *Id.* Because the appellant received the commissions owed to him under his contract and he was "never terminated," Section 407.913 did not apply to him. *Id.*

We are not persuaded by the limited analysis of the Missouri sales commission statutes by the Eighth Circuit, and decline to follow its interpretation of Section 407.913. The *McKay* court appears to

adopt what might be considered a layman's understanding of "termination," yet fails to engage in any substantive discussion to support its conclusion. Our review of the Eighth Circuit's opinion that "termination" equals "discharge" reveals no statutory construction, interpretation, analysis, or citation to case law. In fact, the Court's entire discussion of this particular point is limited to only two sentences.

The *McKay* case is also factually distinguishable from the facts before us. In *McKay*, the court considered not only the fact that the appellant had voluntary resigned, but more importantly, that Section 407.913 does not provide for any recovery of a sales commission under a theory of quantum meruit, an issue not presented here. Federal appellate opinions interpreting Missouri law are not binding on Missouri courts. *See Russell v. Healthmont of Missouri, LLC*, 348 S.W.3d 784, 787 (Mo.App. W.D.2011). We are not persuaded by the cursory discussion in *McKay*, and reject its holding to the extent it limits the application of Section 407.913 to the termination of a sales representative by a principal.

Both the ordinary meaning of "termination" as found in the dictionary and the use of that term in Sections 407.912 and 407.913 lead to but one conclusion: that the statutory damages made available by the legislature under Section 407.913 apply to any termination of the sales representative-principal relationship, and not only to involuntary terminations by the principal. We note that this interpretation is consistent with the employment agreement entered into between Lapponese and Carts of Colorado, which expressly stated that either Lapponese or Carts of Colorado could "terminate [his] employment at any time, for any reason, with or without no-

tice." The fact that Lapponese terminated his contract with Carts of Colorado does not remove him from the protections of Section 407.913. We find it noteworthy that the principal's liability for statutory damages stems only from the principal's non-payment of sales commissions rightfully earned. That being the case, we see no logic in allowing a penalty for non-payment of commissions rightfully due in only some circumstances. The statute addresses the wrong of not paying commissions lawfully due, regardless of the reason of termination. Our holding is consistent not only with the plain meaning of the words used in Section 407.913, but is the only reasonable interpretation that gives full effect to the remedies created by the legislature.

Accordingly, we hold that the trial court did not err in giving the jury Instruction No. 11 or in denying Carts of Colorado's motions for directed verdict, judgment notwithstanding the verdict, new trial, or to amend judgment. Points One and Two are denied.

## II. The trial court properly found that Section 407.912 applies to Lapponese and Carts of Colorado.

The third point on appeal challenges the trial court's judgment because Section 407.912 requires termination of a contract. Carts of Colorado argues there is no evidence that any contract was terminated by either party, and that the trial court erroneously interpreted Section 407.912 to apply upon the termination of employment, and not the termination of a contract.[2] Carts of Colorado further claims, without any citation to case law or other legal support, that any contract between it and Lapponese could not have been "terminat-

---

2. We note that this point on appeal is in direct conflict with Carts of Colorado's first two points on appeal, wherein Carts of Colo-

rado urged this Court to construe Section 407.912 to require involuntary termination of employment.

ed" because Lapponese currently is claiming rights under the "subject contract."

■ We do not agree with the trial court's substitution of the term "employment" for "contract" in Section 407.912, and will not interpret the statute beyond the plain and unambiguous terms used. However, despite our disagreement with the trial court's interpretation of Section 407.912, we are "primarily concerned with the correctness of the trial court's result, not the route taken by the trial court to reach that result. Thus, the judgment will be affirmed if cognizable under any theory, regardless of whether the reasons advanced by the trial court are wrong or not sufficient." *Blue Ridge Bank and Trust Co. v. Trosen*, 309 S.W.3d 812, 815–816 (Mo.App. W.D.2010) (quoting *Blue Ridge Bank & Trust Co. v. Trosen*, 221 S.W.3d 451, 462–63 (Mo.App. W.D.2007)); *see also Banks v. Cent. Trust & Inv. Co.*, 388 S.W.3d 173, 176 (Mo.App. E.D.2012).

■ By its plain terms, Section 407.912 applies when a contract between a principal and sales representative is terminated. The relevant portion of the statute states:

> 3. *When the contract between a sales representative and a principal is terminated,* all commissions then due shall be paid within thirty days of such termination. Any and all commissions which become due after the date of such termination shall be paid within thirty days of becoming due.

Section 407.912.3. As explained above, the ordinary meaning of "termination" is the action of bringing something to an end.

Here, the employment relationship between Lapponese and Carts of Colorado was governed by a contract, which by its express terms could be terminated at the will of either party at any time. When he resigned on January 15, 2010, Lapponese exercised his right to terminate the contract, and correspondingly, his employment relationship with Carts of Colorado.

By terminating the contract, Lapponese triggered Carts of Colorado's duty under Section 407.912 to pay those commissions then due to him within thirty days. *See* Section 407.912(3). That Lapponese later filed suit for his unpaid commissions and statutory damages provided under Sections 407.911 through 407.913 does not negate the fact that the contract between "the sales representative and principal" was terminated. Carts of Colorado cites no judicial support for its theory that a contract is not terminated if a party seeks to recover damages under said contract. This proffered theory directly conflicts with well-established contract principles that recognize the rights of a party to a contract to seek damages under a contract which has been terminated as a result of a material breach or anticipatory repudiation. *See Fire Sprinklers, Inc. v. Icon Contracting, Inc.*, 279 S.W.3d 230, 234 (Mo.App. E.D.2009) ("If a breach is material, the non-breaching party can terminate the contract and sue for total breach."); *Reed v. Reberry*, 883 S.W.2d 59, 64 (Mo. App. S.D.1994) ("if a promissor repudiates his obligation before the time for performance has arrived, the promisee then has the option to treat the agreement as broken and at once bring an action for recovery of his damages"). In such cases, like here, the right to seek damages survives the termination of the agreement from which the damages flow. Here, we find that there is sufficient evidence in the record that a contract was entered into between the parties and was subsequently terminated.

Accordingly, despite the trial court's erroneous reasoning, Section 407.912 applies and the trial court did not err in denying Carts of Colorado's motions for directed verdict, judgment notwithstanding the verdict, new trial, or to amend judgment. Point three is denied.

### III. Calculation of attorneys' fees.

 In its fourth point on appeal, Carts of Colorado asserts that the trial court erred in its award of attorneys' fees to Lapponese because the award included fees incurred by Lapponese which did not relate to his claim under Section 407.911 et seq., but to fees incurred in defending against Carts of Colorado's counterclaim. Carts of Colorado maintains that its counterclaim for breach of the separate non-disclosure agreement is based upon facts and legal theories that are distinct and do not overlap with Lapponese's claim under Sections 407.911 through 407.913. Carts of Colorado claims the trial court should not have awarded Lapponese fees for any time attributable to defending the counterclaim.

Lapponese counters that fees incurred defending the counterclaim cannot be segregated from fees incurred prosecuting Lapponese's claim under Sections 407.911 through 407.913 because Carts of Colorado also asserted its counterclaim as an affirmative defense to his statutory claims. Lapponese argues that because it was necessary for him to prevail on the issue of breach of the non-disclosure agreement to ultimately prevail on his claim for unpaid sales commissions and statutory damages, the trial court made an appropriate award of all attorneys' fees incurred by Lapponese in this litigation.

 Missouri follows the "American Rule" which generally provides that each litigant must bear the expense of his or her attorneys' fees unless fees are authorized by statute or contractual agreement. *City of Cottleville v. St. Charles Cnty.*, 91 S.W.3d 148, 150 (Mo.App. E.D. 2002). When an award of attorneys' fees is authorized for one particular claim among many, the trial court must segregate the claims, even if segregation would be difficult. *W. Blue Print Co., LLC v. Roberts*, 367 S.W.3d 7, 23 (Mo. banc 2012).

However, if the claims in issue share a common core of facts and are based on related legal theories so that much of counsel's time is devoted generally to the litigation as a whole, and it would be difficult to divide counsel's hours on a claim-by-claim basis, the claims will not be viewed as distinct. *DeWalt v. Davidson Serv./Air, Inc.*, 398 S.W.3d 491, 507 (Mo. App. E.D.2013). Essentially, where the effort and proof were the same for all claims, "the efforts of the prevailing attorneys should not be discounted." *Id.*

Section 407.913 authorizes the trial court to award reasonable attorneys' fees and costs to the prevailing party. In assessing a fee award, Missouri courts have set forth a number of factors to consider, including: 1) the rates customarily charged by the attorneys involved in the case and by other attorneys in the community for similar services; 2) the number of hours reasonably expended on the litigation; 3) the nature and character of the services rendered; 4) the degree of professional ability required; 5) the nature and importance of the subject matter; 6) the amount involved or the result obtained; and 7) the vigor of the opposition. *Id.* at 506–07.

In its judgment, the trial court awarded Lapponese $69,411.50 in attorneys' fees, an amount representing all fees incurred. The judgment contains no explanation for the trial court's decision to award attorneys' fees, nor any rationale regarding the amount awarded. Because the trial court provided no findings of facts or conclusions of law regarding its award of attorneys' fees, we cannot determine if the trial court properly considered the issue of segregation of fees, and therefore, whether it abused its discretion. Accordingly, we reverse that part of the judgment awarding attorneys' fees and remand for findings of fact and conclusions of law on the issue of calculation of the attorneys' fee award.

*Conclusion*

We reverse and remand for findings of fact and conclusions of law consistent with this opinion on the calculation of Lapponese's attorneys' fee award. We affirm the judgment in all other respects.

ROBERT M. CLAYTON, III, C.J., and ROY L. RICHTER, J., Concur.