# United States Court of Appeals

## For the Eighth Circuit

_____

No. 14-1181

_____

In re: Pepper Minthia Hardy

*Debtor*

------------------------------

Pepper Minthia Hardy

*Appellant*

v.

Richard Fink

*Appellee*

------------------------------

National Association of Consumer Bankruptcy Attorneys; Holley A. Nicodemus

*Amici Curiae*

_____

Appeal from the United States Bankruptcy
Appellate Panel for the Eighth Circuit

_____

Submitted: January 13, 2015
Filed: June 2, 2015

_____

Before LOKEN, MURPHY, and MELLOY, Circuit Judges.

_____

MELLOY, Circuit Judge.

Pepper Hardy filed for bankruptcy and sought to exempt from her bankruptcy estate a portion of her tax refund attributable to the Additional Child Tax Credit.  See 26 U.S.C. § 24(d).  She asserted the refundable credit qualified as a public assistance benefit under Missouri's schedule of exemptions.  The trustee, Richard Fink, objected, and the bankruptcy court sustained the objection.  The Bankruptcy Appellate Panel (BAP) affirmed.  Because Congress demonstrated an intent to help low-income families through amendments to the Additional Child Tax Credit statute, we conclude the credit at issue qualifies as a public assistance benefit.  Accordingly, we reverse.

I

Pepper Hardy filed for Chapter 13 bankruptcy relief in October 2012.  In November, she filed her Schedule B and Schedule C.  On her Schedule B, Hardy stated that she would be receiving a 2012 tax refund.  On her Schedule C, Hardy claimed the majority of the refund as exempt.  She noted that $2,000 of the refund was attributable to federal Child Tax Credit (CTC).  She claimed that the CTC was a "public assistance benefit" that would be exempt from the bankruptcy estate under Missouri law.

The trustee objected to the exemption.  The bankruptcy court sustained the objection in a memorandum opinion in May 2013.  It applied Missouri law and found that the CTC was not a public assistance benefit because the purpose of the credit was to "reduce the tax burden on working parents and to promote family values" and because the full credit was available to head-of-household filers with Modified Adjusted Gross Incomes (MAGI) of up to $75,000 and joint-married filers with

- 2 -

MAGIs of up to $110,000.[1]  The CTC, unlike other traditional public assistance benefits, did not benefit only the "needy."  The bankruptcy court determined the differences between the CTC and the refundable portion of the CTC—the Additional Child Tax Credit (ACTC)—were "beside the point" and therefore did not thoroughly address them.

Hardy appealed to the BAP, which affirmed.  See Hardy v. Fink (In re Hardy), 503 B.R. 722 (8th Cir. B.A.P. 2013).  The BAP relied on the same logic as the bankruptcy court.  Applying canons of statutory interpretation, the BAP first looked at the plain and ordinary meaning of "public assistance benefit."  After searching numerous dictionaries, the BAP reached the same conclusion as the bankruptcy court: "public assistance benefits" are those benefits that the government provides to the "needy."  The BAP similarly concluded that because non-needy families—married couples filing jointly with MAGIs in excess of $100,000—were potentially eligible for the credit, it was not "public assistance."

Hardy argued that the refundable portion, the ACTC, benefitted only lower income families. The BAP rejected this argument, stating Hardy failed to present any evidence that only lower income families were eligible for the refundable portion of the credit.  The BAP discounted a decision from an Illinois bankruptcy court that supported Hardy's position because the Illinois court could not say that a relatively affluent family will "never" benefit from the ACTC.  Id. at 726 (citing In re Koch, 299 B.R. 523 (Bankr. C.D. Ill. 2003)).  The BAP also noted that the ACTC required recipients to meet a minimum earned income threshold and that the "most needy" would not benefit from the ACTC.  Id. ("We fail to comprehend how a benefit that may not be available to the *most* needy can be considered a 'public assistance

---

[1]Modified adjusted gross income is "adjusted gross income increased by any amount excluded from gross income under [26 U.S.C. §§] 911, 931, or 933 [income from outside the contiguous United States]."  26 U.S.C. § 24(b)(1).

benefit.'"). In making that comment, however, the BAP quoted from Koch, explaining that only taxpayers with incomes above $10,350 were eligible for the ACTC in 2002. The BAP noted in a footnote that the income threshold was lowered in 2009 to $3,000, but the change did not affect the BAP's decision.

Hardy appealed to this Court. After both parties filed their briefs, amici, including the National Association of Consumer Bankruptcy Attorneys, filed a brief. The amicus brief was in response to a Southern District of Iowa Bankruptcy Court decision that found tax-refund money attributable to the ACTC is exempt under an Iowa statute exempting public assistance benefits. See In re Hatch, 519 B.R. 783 (Bankr. S.D. Iowa 2014).

II

The parties seek a determination of whether a portion of a tax refund based on the ACTC is exempt from the bankruptcy estate as a public assistance benefit under Missouri law.

When a party appeals a BAP decision, "we act as a second reviewing court of the bankruptcy court's decision, independently applying the same standard of review as the BAP." Islamov v. Ungar (In re Ungar), 633 F.3d 675, 678–79 (8th Cir. 2011). We review legal questions, such as statutory interpretation, de novo. Id. at 679. We liberally construe exemption statutes in favor of debtors. Wallerstedt v. Sosne (In re Wallerstedt), 930 F.2d 630, 631 (8th Cir. 1991). And the trustee has the burden to demonstrate an exemption is improper. Fed. R. Bankr. P. 4003(c).

Missouri has opted out of the federal exemption scheme and employs its own statutory scheme for bankruptcy exemptions. See Mo. Rev. Stat. § 513.427; 11 U.S.C. § 522(b)(2). Missouri exempts "public assistance benefit[s]" from bankruptcy estates. Mo. Rev. Stat. § 513.430.1(10)(a). We turn to Missouri canons of statutory

- 4 -

construction to determine the limits of the term "public assistance benefit" as used in § 513.430.1(10)(a). See Sholdan v. Dietz, 108 F.3d 886, 888 (8th Cir. 1997) ("The scope of [a state-created] exemption is fixed by state law.").

The Missouri exemption schedule does not expressly define "public assistance benefit." But the Missouri legislature has defined "public assistance benefits" in other parts of the Missouri Code. These other code sections, however, provide little guidance for the question at hand. Each definition refers specifically to benefits provided under Missouri Code provisions and none mention federal tax refunds. For example, the following definition is found in a chapter entitled, "County Health and Welfare Programs:"

> As provided in this section:
> (1) "Public assistance benefits, programs and services" means anything of value, including money, food, food stamps, commodities, clothing, utilities, utilities payments, shelter, drugs and medicine, materials, goods, and any service, including institutional care, medical care, dental care, child care, psychiatric and psychological service, rehabilitation instruction, training, or counseling provided pursuant to [select Missouri Code provisions], or benefits, programs, and services provided or administered by the department of social services.

Mo. Rev. Stat. § 205.967.1; see also id. § 578.375(5) (criminal statute with nearly identical wording). Even with respect to state-sponsored benefits, Missouri courts have recognized these definitions are not all-encompassing; benefits not expressly mentioned in the Missouri Code may nonetheless qualify as public assistance benefits. See Jones v. Hous. Auth. of Kan. City, 174 S.W.3d 594 (Mo. Ct. App. 2005) (discussing whether certain government-sponsored housing lists were exempt from sunshine law requests under a welfare exception and explaining that the fact "Chapter 99 housing authorities are not expressly listed in [the statute defining 'public assistance benefits'] does not imply that subsidized housing and/or paying less than the market rate for a lease is not 'welfare' or 'public assistance'").

Missouri's exemption statute also demonstrates that these other definitions are not overly helpful. A prior version of Missouri's exemption statute allowed debtors to claim only "local" benefits, but the legislature removed the modifier "local" in 2012, expanding the reach of the exemptions. See In re Corbett, 2013 WL 1344717, at *1 (Bankr. W.D. Mo. Apr. 2, 2013) (discussing the statutory changes). The exemption statute was written to reach beyond simply "local" benefits. The definitions contained in the Missouri Code, however, discuss only Missouri-sponsored benefits, not federal ones.

Under Missouri law, when a term in a statute is not defined, courts seek to find what the legislature intended by the term—generally reflected by a term's plain and ordinary meaning. Brinker Mo., Inc. v. Dir. of Revenue, 319 S.W.3d 433, 437–38 (Mo. 2010) (en banc). To help determine the plain and ordinary meaning, courts may turn to the dictionary for guidance. Lapponese v. Carts of Colo., Inc., 422 S.W.3d 396, 402 (Mo. Ct. App. 2013). We agree with the BAP that "public assistance benefits" are those government benefits provided to the needy. See Hardy v. Fink (In re Hardy), 503 B.R. 722, 725 (8th Cir. B.A.P. 2013) (consulting dictionaries and concluding "public assistance" means government benefits provided to the needy); see also In re Hatch, 519 B.R. 783, 788 (Bankr. S.D. Iowa 2014) (determining whether the ACTC fell within public assistance by analyzing whether the credit benefits low-income families).

We now must determine whether the ACTC fits this definition. To do so, we look to Congress's intent in passing the law, the history of the statute (including any amendments), and the operation of the statute in practice. See In re Hardy, 503 B.R. at 725–26 (collecting cases describing how bankruptcy courts determine whether tax credits fit within "public assistance" schemes); In re Hatch, 519 B.R. at 788–90; In re Corbett, 2013 WL 1344717, at *1–2 (looking at the legislative history to determine whether the earned income tax credit was a public assistance benefit); In re Dever, 250 B.R. 701, 704–05 (Bankr. D. Idaho 2000).

Hardy argues that the ACTC should be exempt from the bankruptcy estate because it benefits the needy. She argues that so "long as there is *any* 'public assistance benefit[,'] even a peppercorn, then the exemption should be allowed." (emphasis added). In other words, Hardy asserts that if anyone who is receiving the credit can be considered "needy," then the credit should fit within the exemption. The trustee conceded at oral argument that the majority of ACTC recipients are lower income families. But he nevertheless argued that a small number of taxpayers that may not be considered "needy" would be eligible for the credit. According to the trustee, the credit therefore could not be considered a "public assistance benefit" because those non-needy taxpayers would be eligible. We find neither argument overwhelmingly persuasive but nevertheless conclude that the ACTC is a "public assistance benefit" that is exempt from the bankruptcy estate. We base the conclusion, in large part, on the amendments to the ACTC since its initial creation.

Congress initially passed the CTC in 1997 as a means to "reduce the individual income tax burden of [families with dependent children, to] better recognize the financial responsibilities of raising dependent children, and [to] promote family values." H.R. Rep. 105-148, at 310 (1997).[2] It is codified at 26 U.S.C. § 24. At its most basic, the original CTC statute allowed parents under a certain income threshold to claim a nonrefundable credit of $500 per qualifying child. Taxpayer Relief Act, Pub. L. No. 105-34, § 101, 111 Stat. 788, 796–99. After MAGI meets that threshold—$55,000 married filing separately, $75,000 head of household, and $110,000 married filing jointly—the credit is reduced by $50 per $1,000 MAGI. Id. The statute also provided a formula under which a family with three or more children could be eligible for a partial refund of the credit, the ACTC. Id. Since its initial passage, however, 26 U.S.C. § 24 has undergone a number of substantial changes.

---

[2]For an in-depth look at the Child Tax Credit, see Margot L. Crandall-Hollick, Cong. Research Serv., R41873, The Child Tax Credit: Current Law and Legislative History (2014).

The changes demonstrate that the tax credit has been modified to benefit low-income families.

The first major changes occurred in 2001 with the signing of the Economic Growth and Tax Relief Reconciliation Act of 2001, Pub. L. No. 107-16, § 201, 115 Stat. 38, 45–47. The CTC increased from $500 per child to $600 per child immediately with additional increases scheduled for future years. See id. (2001–2004 tax years: $600; 2005–2008 tax years: $700; 2009 tax year: $800; and 2010 and after: $1,000). The ACTC also became available to all families with qualifying children, not just those with three or more children. Id. At the time, the refundable portion of the credit was limited to 10% of a taxpayer's "earned income"[3] over $10,000 (adjusted for inflation based on 2001 dollars). Id. An increase to 15% over the "earned income" threshold was scheduled for the 2005 tax year. Id. The ability to claim a refund, even if just partial, benefitted those whose tax liability was less than the full credit amount. A portion of the tax credit that would previously have gone "unused" (insofar as it would not have lowered tax liability) would now return to the taxpayer as a refund. This change overwhelmingly benefitted lower income taxpayers. Those in higher tax brackets would simply continue to use the tax credit to reduce liability, and no refund would be necessary.

Numerous senators recognized and commented on the benefits of the 2001 amendments for low-income taxpayers. One senator described the refundability change as "a key to helping children in low-income families." 147 Cong. Rec. S5770-01 (statement of Sen. Boxer). Another defended the "new refundable per child tax credit for low-income, working families." Id. (statement of Sen. Snowe). She explained the legislation's effect:

---

[3]"Earned income" for purposes of the ACTC is defined by the earned income formula for the Earned Income Tax Credit set forth in 26 U.S.C. § 32(c)(2).

In its original form, the tax relief plan would not have reached all full-time workers—the tax reduction would have disappeared for wage-earners with net incomes of less than about $22,000. Indeed, without refundability, there are almost 16 million children whose families would not benefit from the doubling of the Child Tax Credit.

Id. And another echoed these sentiments: "Together we have stood fast in our insistence that the child tax credit should be refundable so hard-working, low-income families would receive a tax cut." Id. (statement of Sen. Lincoln). Others similarly lauded the benefits of the refundable credit to low-income families. See id. (statement of Sen. Grassley) ("The child credit expansion to low-income families is immediate. Over 16 million more children will be helped by the provisions of this bill."); id. (statement of Sen. Wellstone) (describing the child credit expansion and explaining that "half a million children will be lifted out of poverty"); 147 Cong. Rec. S5028-01 (statement of Sen. Baucus) ("We increase the amount of the [child tax] credit that is partly refundable so lower income families can benefit from the credit as well.").

In 2003, Congress increased the tax credit from $500 to $1,000 per child for the 2003 and 2004 tax years. Jobs And Growth Tax Relief Reconciliation Act of 2003, Pub. L. No. 108-27, § 101, 117 Stat. 752, 753. In 2004, Congress extended the $1,000 credit for all future years. See Working Families Tax Relief Act of 2004, Pub. L. No. 108-311, §§ 101–02, 118 Stat. 1166, 1167–68. While the change in the amount of the tax credit benefitted all eligible taxpayers, Congress provided additional benefits to low-income taxpayers by accelerating the change to the refundability rate, increasing it to 15% of "earned income" over $10,000. See id. This allowed low-income taxpayers to claim a greater portion of the "unused" (i.e., not used to reduce liability) CTC as a refund. For example, a taxpayer with $25,000 in earned income, two children, and no tax liability would not have been entitled to a full $2,000 refund prior to the change from 10% to 15%. Prior to the change, the refund would have been limited to $1,500 (10% of the $15,000 above the $10,000

earned income threshold).  For a similar taxpayer (with two children and no tax liability) with an earned income of over $30,000, the change would have made no difference; such an earner would have received the full $2,000 refund at a 10% or 15% refundability rate.  When signing the 2004 law, President Bush recognized the benefits to low-income families.  He remarked that the changes would "increase the child credit refunds for almost 7 million low-income families in the 2004 tax year." Remarks on Signing the Working Families Tax Relief Act of 2004, 2004 U.S.C.C.A.N. S27.

In 2008, additional amendments further benefitted low-income families. Congress reduced the threshold refund eligibility amount from $10,000 in earned income to $8,500.  Emergency Economic Stablization—Energy Improvement and Extension—Tax Extenders and Alternative Minimum Tax Relief, Pub. L. No. 110-343, § 501, 122 Stat. 3765, 3876 (2008).  In 2009, Congress further lowered that threshold, setting the amount at only $3,000 for the 2009 and 2010 tax years. American Recovery and Reinvestment Act of 2009, Pub. L. No. 111-5, § 1003, 123 Stat. 115, 313.  These changes enabled more low-income earners to claim a refund and increased the refund amount for many low-income earners who previously were receiving a small refund.  For example, a taxpayer with an earned income of $11,000 previously could have obtained a refund of only $150, regardless of the number of children.  With the change to a $3,000 threshold amount, that same taxpayer would have been eligible for a full $1,000 refund with one child or $1,200 with two children (15% of $8,000).  And a taxpayer making only $5,000 a year, who previously would have been ineligible for any refund, would be able to claim up to $300.  We find the 2008 and 2009 changes particularly instructive for the case at hand.  These amendments substantially shifted the balance between providing incentives for taxpayers to earn income, on the one hand, and simply providing benefits to the needy, on the other.

In 2010, Congress extended the minimal threshold to cover tax years 2011 and 2012. Tax Relief, Unemployment Insurance Reauthorization, and Job Creation Act of 2010, Pub. L. No. 111-312, § 103, 124 Stat. 3296, 3299. Upon signing the bill, President Obama commented on the benefits to low-income taxpayers, "Twelve million families with 24 million children will benefit from extensions of the . . . Child Tax Credit. And when combined with the payroll tax cut, 2 million American families who otherwise would have lived in poverty next year will instead be lifted out of it." Statement by President Obama Upon Signing H.R. 4853, 2010 U.S.C.C.A.N. S41. Then, in 2013, Congress extended the $3,000 minimum through 2017, thus extending the benefits to low-income families. American Taxpayer Relief Act of 2012, Pub. L. No. 112-240, § 103, 126 Stat. 2313, 2319 (2013).

As evidenced by the various amendments to the initial CTC and the accompanying legislators' comments about those changes, the intent of the legislature when modifying the ACTC was to benefit low-income families. The ACTC has fulfilled Congress's goals. In practice, it appears to overwhelmingly benefit low-income families.

Assuming eligibility, without factoring in other tax credits or deductions, a single parent supporting one child would be eligible for the full ACTC only if the taxpayer's AGI is below $16,300.[4] If her AGI were to exceed $26,300, she would no longer be eligible for any ACTC. For two children, a single parent is eligible for the

---

[4]These calculations are based on the 2012 tax tables, deductions of $3,800 per exemption (e.g., the parent is one exemption, a child is one exemption), and the standard head of household deduction of $8,700. If a taxpayer has an AGI above $16,300, the taxpayer has some tax liability after exemptions and the CTC is used to reduce that liability.

full refundable credit only if her AGI is less than $20,100, and the refundable credit phases out completely at $37,550.[5]

Moreover, the conclusion that the ACTC is a "public assistance benefit" is consistent with a number of bankruptcy courts that have addressed the issue. In 2003, a Central District of Illinois Bankruptcy Court found the ACTC was exempt from the bankruptcy estate under an Illinois law that, similar to Missouri, exempts "public assistance benefits." In re Koch, 299 B.R. 523, 528 (Bankr. C.D. Ill. 2003). That court determined that the 2001 changes "diminish[ed] the impact of the statements of legislative intent surrounding the provision's original enactment," id. at 527, and that the practical effect of the refundable credit was to benefit low-income taxpayers, id. at 528. After noting that the original CTC would help lower tax liability, the court noted that taxpayers are not "eligible for the refundable additional child tax credit unless the amount of the child tax credit exceeds the tax liability, reduced by other tax credits" and that "[i]n nearly all instances where taxpayers earn more than a modest level of income, the entire amount of the allowable child tax credit will be utilized in reducing tax liability." Id. at 528. A Northern District of Illinois Bankruptcy Court examined the ACTC in its 2014 form and similarly found the credit fell under a public-assistance exemption. In re Vasquez, 516 B.R. 523, 526–28 (Bankr. N.D. Ill. 2014) (finding CTC and ACTC qualify as public assistance). And most recently, an Iowa bankruptcy court held the ACTC to be exempt as a public assistance benefit. In re Hatch, 519 B.R. at 789–91. The bankruptcy court in Hatch noted that the parties in the present case failed to present arguments with respect to the changes that have occurred to the CTC since its inception and that those changes have affected the way in which the CTC benefits low-income families. See id. The court further noted that in practice, the ACTC is available almost exclusively to lower income taxpayers. Id. at 790–91.

[5]Again, these calculations are based on 2012 tax tables. A taxpayer with three exemptions and the standard head of household deduction has no tax liability until the taxpayer's AGI hits $20,100, and at $37,550, tax liability reaches over $2,000.

Other courts have disagreed with these conclusions. But these courts have addressed only the CTC and ACTC as first enacted, without taking into account the various amendments to the ACTC and the legislative purposes behind those amendments. See In re Steinmetz, 261 B.R. 32 (Bankr. D. Idaho 2001); In re Dever, 250 B.R. 701, 706 (Bankr. D. Idaho 2000); In re Jackson, 2013 WL 3155595, at *2 (Bankr. S.D. Ind. June 20, 2013) (stating in dicta that the ACTC was not a public assistance benefit, relying on Steinmetz and Dever). Within our circuit, additional courts have rejected the ACTC as public assistance, but those courts have based their conclusions on the rulings below. See, e.g, In re Dmitruk, 2014 WL 2600280, at *2–3 (Bankr. D. Minn. June 10, 2014) (citing the BAP opinion); In re Gray, 2013 WL 2452693, at *1 (Bankr. W.D. Mo. June 5, 2013) (citing the bankruptcy court opinion).

Here, the BAP focused too narrowly on the CTC as originally enacted. It is necessary to also consider the various statutory amendments that modified the refundable portion of the credit—the portion of the credit at issue in this case. These modifications demonstrate Congress intended to benefit the needy with the ACTC. Accordingly, we find the ACTC meets the Missouri exemption requirement of a public assistance benefit. We reverse the judgment of the Bankruptcy Appellate Panel.

LOKEN, Circuit Judge, concurring.

I agree with the court that Missouri law governs this bankruptcy exemption issue, and that "public assistance benefits," the operative term in Mo. Rev. Stat § 513.430.1(10)(a) that has not been clearly defined in Missouri law, is best defined as "those government benefits provided to the needy." Applying that standard, I would reverse for the reasons of state law articulated by Chief Bankruptcy Judge Federman in In re Corbett, No. 13-60042, 2013 WL 1344717 (Bankr. W.D. Mo. Apr. 2, 2013): in my view, Judge Federman's analysis of the recent amendment to the Missouri exemption statute applies to the exemption of any portions of both the

federal earned income tax credit and the federal additional child tax credit that are property of the debtor's estate as a matter of federal bankruptcy law.  Accordingly, I concur in the result.

_____