

# In the Missouri Court of Appeals
## Eastern District

### DIVISION FOUR

MIKE ABDUHAMED,

    Appellant/Cross-Respondent,

vs.

CAROL HOUSE FURNITURE, INC.,

    Respondent/Cross-Appellant.

)
)
)
)
)
)
)
)
)
)
)

No. ED112408

Appeal from the Circuit Court of
St. Louis County

Honorable Kristine A. Kerr

Filed: February 11, 2025

### Introduction

Mike Abuhamdeh[1] ("Abuhamdeh") appeals the judgment wherein he was awarded damages for unpaid and past-due sales commissions from Carol House Furniture, Inc. ("Carol House"). Three provisions of the Missouri Merchandising Practices Act (the "MMPA") – §§ 407.912, 407.913, and 407.915 – are pertinent to this appeal. Section 407.912 consists of three subparts and provides: (1) the written terms of the contract between a principal and a sales representative control when commissions are due; (2) sales representatives can collect commissions on products ordered prior to the termination of the contract with their principal but delivered and accepted by the purchaser after such termination; and (3) the commissions that become due after a sales representative's termination shall be paid within thirty days of becoming due. §§ 407.912.1(1)–407.912.3. Section 407.913 discusses liability in the event a principal fails

---

[1] This Court notes Appellant's name is misspelled in the style of the case and docket entry sheet. We will use the correct spelling throughout this opinion.

to timely pay its sales representative's commissions, including the imposition of penalties. Lastly, § 407.915 renders void any contractual provision purporting to waive any provision of §§ 407.911 to 407.915.

In his sole point on appeal, Abuhamdeh argues the trial court erred in not imposing the mandatory statutory penalty under § 407.913 after finding Carol House failed to timely pay his commissions pursuant to § 407.912. Carol House cross-appeals asserting the trial court erred in declaring the Sales Associate Compensation Plan (the "Agreement") entered into by the parties conflicted with § 407.912.2. Carol House further asserts the trial court erred in concluding § 407.912.2 mandates the payment of commissions on goods ordered prior to the Agreement's termination but delivered and accepted by the customer after the Agreement's termination. Specifically, Carol House contends, pursuant to § 407.912.1(1), the Agreement controls when Abuhamdeh's commissions were due and the Agreement did not require it to pay his commissions for products delivered to customers after his termination.

This Court holds the statutory penalty provided in § 407.913 should have been applied to Abuhamdeh's award because Carol House failed to pay Abuhamdeh all of his commissions within thirty days of becoming due. This Court further holds Carol House's claim of error on cross-appeal has no merit. The Agreement's provision stating a sales associate would be paid commissions for all delivered business through the last day they worked is void because it conflicts with the MMPA and purports to waive the protections afforded to a sales representative under § 407.912.2.

Accordingly, we affirm in part, and reverse and remand in part.

**Factual and Procedural Background**

Abuhamdeh began working as a sales associate for Carol House on May 8, 2017, and signed the Agreement the following day. Relevant to this appeal, the Agreement specified that

2

Abuhamdeh would be paid on a commission basis and receive his "[c]ommissions … [m]onthly, on the 2nd Fri. for the prior month's [d]elivered [b]usiness." The Agreement further provided:

> Sales Associate will be paid (after leaving Carol House) for all Delivered business thru [sic] [t]he last day worked, minus all Draws and Payroll Deductions in arrears. Associate[s] that have made Quota consistently for the past 2 Years and are in Good Standing with Carol House will be considered for additional commissions.

On February 4, 2021, Abuhamdeh resigned from his employment with Carol House. Abuhamdeh believed he was entitled to commissions for products delivered to and accepted by his customers in the months following his resignation. Carol House initially informed Abuhamdeh he was not entitled to these commissions pursuant to the terms of the Agreement. Later, Carol House agreed to pay Abuhamdeh commissions for products delivered and accepted in the months following his resignation:

| Delivered Business (2021) | Gross Commission Due | Date Paid |
| --- | --- | --- |
| January | $2,365.15 | February 12, 2021 |
| February | $3,103.04 | March 12, 2021 |
| March | $2,031.84 | April 9, 2021 |
| April | $3,088.78 | May 14, 2021 |
| May | $1,886.84 | June 11, 2021 |
| June | $53.38 | July 9, 2021 |

Carol House believed there were no additional sales made by Abuhamdeh that were in the process of being delivered to customers because his commission check for delivered business in June totaling $53.38 was "small." Carol House did not send any more checks to Abuhamdeh after his June check.

On October 4, 2021, Abuhamdeh filed suit against Carol House for its failure to pay his commissions. On October 13, 2021, Carol House sent a letter to Abuhamdeh's counsel offering to

pay Abuhamdeh $1,498.01.[2] Abuhamdeh did not accept the offer, and no payment was tendered by Carol House.

Additional products from sales made by Abuhamdeh prior to his resignation were delivered and accepted after June. The commissions on those products are as follows:

| Delivered Business (2021) | Commissions |
|---|---|
| July | $698.64 |
| August | $450.98 |
| September | $348.39 |
| October | $92.61 |
| **Total** | **$1,590.62** |

The parties proceeded to a bench trial in 2023. In its judgment, the trial court found "Section 407.912.2 contradicts the Agreement and provides for payment of commissions to a representative for goods ordered prior to the end of the contract but delivered and accepted after the end of the employment contract." Further, the trial court found Carol House complied with the MMPA after they agreed to pay Abuhamdeh's commissions for products delivered after his termination, even though Abuhamdeh had to negotiate with Carol House for these payments. The trial court awarded Abuhamdeh $1,590.62 in actual damages for unpaid commissions due from Carol House, and found, other than the $1,590.62 in dispute, Carol House paid Abuhamdeh's commissions within thirty days. As to Abuhamdeh's argument that § 407.913 applied to support additional damages calculated on an annualized pro rata basis, the trial court disagreed and found Carol House "complied with Section 407.912 by paying applicable commissions within thirty [] days and, therefore, that portion [of] Section 407.913 which authorizes annualized pro rata commissions is not implicated."

This appeal follows.

---

[2] The $1,498.01 check Carol House offered Abuhamdeh did not include his October commission of $92.61.

**Standard of Review**

"On review of a court-tried case, an appellate court will affirm the [trial] court's judgment unless there is no substantial evidence to support it, it is against the weight of the evidence, or it erroneously declares or applies the law." *Ivie v. Smith*, 439 S.W.3d 189, 198–99 (Mo. banc 2014) (citing *Murphy v. Carron*, 536 S.W.2d 30, 32 (Mo. banc 1976)). Additionally, matters of statutory interpretation and questions of contract interpretation are reviewed *de novo*. *Cent. Tr. Bank v. Branch*, 651 S.W.3d 826, 829 (Mo. banc 2022); *Cheek v. Cheek*, 669 S.W.3d 155, 159 (Mo. App. E.D. 2023).

**Discussion**

For ease of analysis, we address Abuhamdeh's appeal and Carol House's cross-appeal together. In his sole point on appeal, Abuhamdeh argues the trial court erred in not imposing the mandatory statutory penalty after finding Carol House failed to timely pay his commissions under the statute. On cross-appeal, Carol House asserts the trial court erred in declaring the Agreement conflicted with the statute and that the statute mandates the payment of sales commissions on goods ordered prior to the Agreement's termination but delivered and accepted after the Agreement's termination.

We begin our analysis by looking to the relevant portions of the MMPA. Next, we analyze whether the Agreement conflicted with the MMPA. Lastly, we determine whether the statutory penalty should have been applied to Abuhamdeh's award.

A. The MMPA is unambiguous

In pertinent part, § 407.912 states:

1. When a commission becomes due shall be determined in the following manner:

> (1) The written terms of the contract between the principal and sales representative shall control;
>
> ….

2. Nothing in sections 407.911 to 407.915 shall be construed to impair a sales representative from collecting commissions on products or services ordered prior to the termination of the contract between the principal and the sales representative but delivered and accepted by the purchaser after such termination.

3. When the contract between a sales representative and a principal is terminated, all commissions then due shall be paid within thirty days of such termination. Any and all commissions which become due after the date of such termination shall be paid within thirty days of becoming due.

Section 407.913, which discusses a principal's liability in civil actions and the imposition of additional damages when a principal fails to timely pay their sales representative commissions, states:

> Any principal who fails to timely pay the sales representative commissions earned by such sales representative shall be liable to the sales representative in a civil action for the actual damages sustained by the sales representative and an additional amount as if the sales representative were still earning commissions calculated on an annualized pro rata basis from the date of termination to the date of payment. In addition the court may award reasonable attorney's fees and costs to the prevailing party.

Further, § 407.915.2 provides: "[a] provision in any contract between a sales representative and a principal purporting to waive any provision of sections 407.911 to 407.915, whether by expressed waiver or by a contract subject to the laws of another state, shall be void."

"[T]he primary rule of statutory interpretation is to give effect to legislative intent as reflected in the plain language of the statute." *Lapponese v. Carts of Colorado, Inc.*, 422 S.W.3d 396, 402 (Mo. App. E.D. 2013). "Courts are not authorized to read a legislative intent into a statute that is contrary to the intent made evident by the plain and ordinary meaning of the statutory language." *Boles v. City of St. Louis*, 690 S.W.3d 592, 600 (Mo. App. E.D. 2024) (citation omitted). This Court must give effect to the language as written and not engage in statutory construction

when the statutory language is clear and unambiguous. *Id.* "In determining whether the language is clear and unambiguous, the standard is whether the statute's terms are plain and clear to one of ordinary intelligence." *Bird v. US Assets Recovery, LLC*, 680 S.W.3d 574, 576 (Mo. App. S.D. 2023) (quoting *Wolff Shoe Co. v. Dir. of Revenue*, 762 S.W.2d 29, 31 (Mo. banc 1988)). This Court is required to read consistent statutes relating to the same subject harmoniously as a whole and in *pari materia* with related sections. *Lapponese*, 422 S.W.3d at 402.

The statutory provisions at issue are plain and clear to one of ordinary intelligence. *See Bird*, 680 S.W.3d at 576; *Boles*, 690 S.W.3d at 600. Thus, the statutory provisions are unambiguous and we must give effect to the language as written. *See Boles*, 690 S.W.3d at 600.

B. Applying the MMPA to the Agreement

We now must analyze the relevant portions of the Agreement and ensure they are consistent with §§ 407.911 to 407.915 of the MMPA. "The cardinal rule in interpreting a contract is to ascertain the intent of the parties and to give effect to that intent." *Cheek*, 669 S.W.3d at 159. "To ascertain the original intent of the parties to a contract, we will give the words of the contract their natural, ordinary, and common sense meaning." *Behrick v. Konert Farms Homeowners' Ass'n*, 601 S.W.3d 567, 573 (Mo. App. E.D. 2020) (internal quotations and citation omitted). "If a contract's terms are clear and unambiguous, we enforce the agreement as written[.]" *Niemuth v. Gaston*, 688 S.W.3d 51, 56 (Mo. App. S.D. 2024). "A contract is ambiguous only if its terms are susceptible of more than one meaning such that reasonable persons may fairly and honestly differ in their construction of the terms." *Id.* (citation omitted).

Carol House points to the express terms of the Agreement which provide: a "Sales Associate will be paid (after leaving Carol House) for all Delivered business thru [sic] [t]he last day worked" and argues the "written terms of the contract … control[]" pursuant to § 407.912.1(1).

7

In effect, Carol House contends the Agreement determines when and if Abuhamdeh's commissions become due. In doing so, Carol House's argument urges this Court to solely focus on a single sentence of § 407.912.1(1), rather than the statutory provisions as a whole. This we cannot do.

Under the express terms of the Agreement, Carol House has no obligation to pay a sales representative's commissions on business delivered after their termination. This provision in the Agreement blatantly conflicts with the language of the statute, and clearly purports to waive the protections afforded to a sales representative by § 407.912.2: ensuring a sales representative, like Abuhamdeh, can collect commissions on products delivered and accepted *after* their termination. Pursuant to § 407.915.2, the provision of the Agreement providing sales representatives are only entitled to commissions for delivered business through his last day worked is ***void***. Accordingly, this Court holds the trial court did not err in finding this provision of the Agreement conflicted with § 407.912.2.

C. Application of § 407.913's penalty

We now turn to whether the trial court erred in not imposing an additional amount to Abuhamdeh's award calculated on an annualized pro rata basis for Carol House's failure to timely pay his commissions pursuant to § 407.913.

The key to determining this issue hinges on whether Carol House timely paid Abuhamdeh's commissions pursuant to the statute. As discussed, *supra*, § 407.912.1(1) directs us to the Agreement's language. The Agreement provides a sales associate's commissions should be paid monthly, on the second Friday for the prior month's delivered business. This provision of the Agreement unambiguously states Abuhamdeh's commissions for a month's delivered business were due on the second Friday of the following month. For example, Abuhamdeh's commission

8

payment for delivered business in July would be due on the second Friday of August. This provision is not reasonably open to a different construction and we must enforce the terms as written. *See Niemuth*, 688 S.W.3d at 56.

To be considered timely under the MMPA, each months' commission payments had to be paid within thirty days of its respective due dates. *See* §§ 407.912.3, 407.913. Here, Carol House owed Abuhamdeh commissions totaling $1,590.62 for July through October following his termination. Carol House stated it believed nothing more was due because Abuhamdeh's commission check for June was "small." However, it was Carol House that was in possession of the delivery reports. Those reports indicated the products sold by Abuhamdeh, any commissions that were owed, and their respective due dates. Hence, it was Carol House who failed to confirm whether additional products sold by Abuhamdeh were delivered after June.

Also, this Court acknowledges Carol House made an offer to pay, but tendered no payment. Nevertheless, Carol House's obligation to pay Abuhamdeh's commissions cannot be discharged by merely offering to pay a disputed amount. *See Gill v. Mercantile Tr. Co.,* 347 S.W.2d 420, 424 (Mo. App. 1961) (stating one's debt is not discharged until they pay the check in due course). And even if Carol House had tendered payment, the offered amount did not include Abuhamdeh's October commission.

Ultimately, it is undisputed Carol House still has not paid Abuhamdeh the commissions for the months of July through October. And since no payment has been made, this Court cannot hold Carol House timely paid Abuhamdeh's commissions. Because the commission payments were not timely, this Court holds Carol House is not only liable for the actual damages Abuhamdeh sustained, but also liable for an additional amount calculated on an annualized pro rata basis as if he was still earning commissions from the date of his termination to the day of his payment. *See*

§ 407.913. Accordingly, the trial court erroneously applied the law when it did not apply the statutory penalty pursuant to § 407.913 to Abuhamdeh's award.

Abuhamdeh's point on appeal is granted and Respondent's cross-appeal is denied.

## Conclusion

The judgment of the trial court is affirmed in part, and reversed in part and remanded for the trial court to determine Abuhamdeh's additional damages for his unpaid and untimely commissions calculated on an annualized pro rata basis pursuant to § 407.913.

_____
Michael S. Wright, Judge

John P. Torbitzky, P.J. and
Robert M. Clayton III, J. concur.